**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

UNITED STATES OF AMERICA                  )
                                          )
              v.                          )        Criminal Action No. 22-100 (RBW)
                                          )
JACOB L. ZERKLE,                          )
                                          )
                    Defendant.            )
_____ )

**<u>GENERAL ORDER GOVERNING CRIMINAL CASES</u>**
**<u>BEFORE THE HONORABLE REGGIE B. WALTON</u>**

This General Order applies to all cases assigned to the criminal calendar of Judge Reggie

B. Walton.  Counsel in all criminal cases must familiarize themselves with and comply with this

General Order.  Importantly, all counsel and parties must treat each other and those involved in

the case resolution process with dignity, respect, and civility, both in court and out of court.  All

counsel must advise their clients of this mandate.  Accordingly, it is hereby

**ORDERED** that all counsel must familiarize themselves with this Order, as well as the

most recent iterations of the Federal Rules of Criminal Procedure and the Local Criminal Rules

of the District of Columbia.[1]  It is further

**ORDERED** that counsel comply with the directives below.

I.      **<u>Communications with the Court</u>.**

Counsel should endeavor to keep communications with chambers to a minimum.  <u>Ex</u>

<u>parte</u> communications with the Court and its law clerks are inappropriate and will not be

tolerated, unless otherwise specified herein.  Counsel shall not contact the Court or chambers,

---

[1]  The Local Criminal Rules are available at http://www.dcd.uscourts.gov/dcd/local-rules.  Further, as used in this Order, "days" shall be construed consistent with the Federal Rules of Criminal Procedure.

except as follows[2]:

    **(a)**      counsel may contact the Acting Courtroom Deputy Clerk, Ms. Chashawn White, at (202) 354-3176:

        **(1)**      with appropriate scheduling inquiries about the case, or

        **(2)**      to notify her that the defendant and/or any witnesses will require interpretive services provided by the Court—this must be done at least ten (10) days in advance of the relevant court proceeding;

    **(b)**      counsel may contact the Court Reporter, Cathryn Jones, at (202) 354-3246, with inquiries regarding transcripts of in-court, or otherwise transcribed, proceedings; and

    **(c)**      counsel may contact chambers, at (202) 354-3290, if:

        **(1)**      the Court first initiates contact with counsel and a response is requested;

        **(2)**      counsel have an inquiry that is strictly procedural in nature[3];

        **(3)**      counsel need to inform the Court of an actual emergency; or

        **(4)**      counsel are inquiring about an unresolved motion that requires immediate attention.[4]

## II.    <u>Rescheduling Cancelled Meetings</u>.

        In the event the Court is closed or the opening time for the start of the Court's day is delayed due to inclement weather or an unforeseen emergency, cases that were scheduled to be heard during the times when the Court was closed or delayed will be rescheduled.

---

[2] Any contact by counsel should include counsel for all parties.  Failure to comply with this provision will be viewed with extreme disfavor by the Court.

[3] Chambers will not provide any legal advice.

[4] Such contact should only serve as a reminder to chambers that a motion requires immediate attention.  Chambers will not comment on the merits of the pending motion.

III.   **Appearances in Court**.

    All courtroom proceedings, unless otherwise indicated, will be conducted in Courtroom 16 of the E. Barrett Prettyman United States Courthouse, 333 Constitution Avenue, NW, Washington, DC 20001.  Non-courtroom conferences and meetings will be held in Judge Walton's chambers unless otherwise specified.

IV.   **Punctuality**.

    Counsel, parties, and witnesses are expected to be punctual for all court proceedings that they are required to attend.  Defense counsel will also advise the defendant, if he/she is on pretrial release, of his/her obligation to appear in court in a timely manner.

V.   **Motions for Extension of Time**.[5]

    The Court expects the parties to complete all Court-imposed tasks within the time frames designated by the Court's Orders.  The parties should not expect the Court to grant extensions of time, unless there is good cause.  Absent a last-minute emergency that necessitates the need for an extension, any motions for an extension of time shall be filed at least four (4) days prior to the deadline the motion is seeking to extend.  All motions for an extension, regardless of when they are filed, must include the following (otherwise they will not be considered by the Court):

    **(a)**   how many, if any, previous extensions of time the Court has granted to each party;

    **(b)**   the specific grounds for the motion, unless good cause precludes public disclosure of those grounds;

    **(c)**   a statement about the effect the Court's granting the motion will have on all other previously scheduled deadlines;

---

[5] The Court will not entertain stipulations concerning extensions of time.  The parties must file a motion, whether consented to or not, when seeking an extension.

**(d)**     the period of time requested for the extension; and

**(e)**     a statement of opposing counsel's position regarding the motion.

**VI.**     <u>**Motions for Leave to File Under Seal**</u>.

In addition to Local Criminal Rule 49(f)(6), the parties should not presume that entire documents will be permitted to be filed under seal, but instead should strive to redact only the information that cannot be disclosed on the public docket.  Therefore, when filing a motion for leave to file under seal, the moving party must not only submit the unredacted version that it seeks to file under seal, but also submit a proposed redacted version of the document for public docketing, if possible.[6]

**VII.**     <u>**Guilty Plea Hearings**</u>.

At least three (3) days in advance of the hearing, counsel shall submit to the Court the following documents:

(a)     the written plea agreement;

(b)     the elements for each offense to which a guilty plea will be entered;

(c)     the factual proffer regarding the charged conduct the defendant is prepared to acknowledge;

(d)     a statement of <u>**all**</u> potential penalty consequences of the guilty plea;

(e)     written notice as to whether the defendant will be pleading guilty to an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43), which would subject the defendant to mandatory deportation and other potential consequences, if the defendant is not a United States citizen, and

(f)     any superseding indictment or new information, if applicable.

---

[6] This requirement is mandated by judicial policy against concealing information from the public unless absolutely necessary due to the vital public interest in open judicial proceedings.

VIII.  **Discovery Motions**.

The Court requires counsel to meet and confer to attempt to resolve all discovery disputes informally.  If counsel must file a motion pertaining to a discovery matter, the motion must comply with Local Criminal Rule 16.1.

**Brady/Giglio Evidence:** Materials and information required to be disclosed pursuant to Brady v. Maryland and its progeny ("Brady Material")—whether in written or recorded format, or otherwise—must be disclosed to defense counsel according to the following schedule:

(1) Brady Material known to the Government at the time of indictment—other than purely impeachment materials and information required to be produced pursuant to Giglio v. United States and its progeny ("Giglio Material")—must be produced to defense counsel no later than two weeks following the date of the filing of the indictment, regardless of whether the parties are engaged in plea discussions.  Such Brady Material includes (simply by way of example) not only information that tends to exculpate a defendant or support a potential defense to the charged offense(s), but also information that tends to mitigate the degree of the defendant's culpability or to mitigate punishment.  Also, this requirement applies regardless of whether the Government credits the Brady Material.

(2) Brady Material (other than Giglio Material) that becomes known to the Government following filing of the indictment must be disclosed, absent exceptional circumstances, within two weeks of when it becomes known and, in any event, no later than four weeks prior to any trial or guilty plea.

(3) Absent exceptional circumstances, Giglio Material must be disclosed four weeks prior to the date of the start of trial.  Such material includes (simply by way of example) a witness's prior inconsistent statements, written or oral; benefits given and promises made to the witness;

information that tends to show that the witness has a personal motive to inculpate the defendant; and information that tends to show that the witness has a physical or mental impairment that could affect the witness's ability to perceive, recall, or recount relevant events.  Giglio material developed less than four weeks before trial (e.g., as a result of further interviews of witnesses) must be disclosed immediately.

(4) To achieve adequate compliance with the foregoing rules, the Government has a continuing obligation to seek Brady Material and Giglio Material from law enforcement and regulatory agencies that are or have been involved in the prosecution of the defendant or in parallel proceedings or investigations involving the defendant.

(5) The above time-tables, being necessary to fulfill the constitutional obligations imposed by Brady v. Maryland, Giglio v. United States, and their progeny, apply regardless of whether the Brady Material and Giglio Material also happen to be producible pursuant to the Federal Rules of Criminal Procedure or the Jencks Act and the time-tables applicable thereto.

(6) For good cause shown, the Government may seek a protective order delaying disclosure of such materials and information.

## IX.   Witnesses and Fifth Amendment Issues.

As soon as counsel become aware that a potential, unrepresented witness has a Fifth Amendment conflict, counsel shall immediately advise the Court of the situation, so that legal counsel can be appointed to the witness.  If appropriate, such notification may be presented to the Court ex parte.

## X.   Releases of Information and Extrajudicial Statements

In accordance with Local Criminal Rule 57.7(b)(1), counsel must refrain from releasing or authorizing the release of information or opinions regarding criminal matters pending before

the Court that a reasonable person would expect to be disseminated by means of public communication, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.  Should such a case qualify as "widely publicized or sensationalized" under Local Criminal Rule 57.7(c), parties, witnesses, and counsel must refrain from making extrajudicial statements that are likely to interfere with the rights of the defendant to a fair trial by an impartial jury.  In the event the Court determines that a case qualifies as "widely publicized or sensational," the Court, pursuant to Local Criminal Rule 57.7(c), will issue a separate order regarding appropriate limitations designed to govern restrictions on the release of such extrajudicial statements by the government, the defendant, any potential witnesses, and counsel.

## XI.   **Trial Procedures**.

The following directives are to ensure that trials before the Court are conducted in a fair, efficient, and dignified manner.  They are not designed to bring about a rigidly formalized trial process.  The Court will attempt, with the full cooperation of counsel, to conduct trials in a fashion that achieves the above objectives in a congenial environment.

**(a)**   Preliminary Instructions: After the jury is selected and sworn, the Court will give preliminary instructions to the jury.  These instructions will generally include the jurors' obligation to be punctual for all court proceedings, a description of the trial process, the role(s) of the participants, the presumption of innocence, the burden of proof, the elements of the offense(s), the daily trial schedule, procedures governing juror note taking, the process for jurors asking questions, the obligations of the jurors to avoid having contact with all individuals associated with the case outside of the courtroom and avoid having contact with the media about the case, and the duty of jurors not to discuss the case with anyone until deliberations begin, as

well as an admonition regarding the use of the internet to research the case or social media to comment on the case.  If counsel desire that any additional preliminary instructions be given, they should make that request in writing at least five (5) days before the trial is scheduled to commence.

      **(b)**    <u>Trial Schedule</u>: The jury portion of the trial will be conducted each trial day from approximately 9:30 a.m. to approximately 12:45 p.m. and from 1:45 p.m. to approximately 5:00 p.m. on Mondays through Thursdays, unless counsel are notified otherwise.  The trial will convene promptly at the designated times on each trial day.  Counsel shall be available in the courtroom at least ten (10) minutes before court is scheduled to begin or resume.

      **(c)**    <u>Note-Taking by Jurors</u>: The jurors will be permitted to take notes in notebooks, which the Court will provide.  The jurors will be given a preliminary instruction about note taking.  During recesses, the jurors will be required to leave their notebooks in their seats in the jury box.  At the end of each day, the notebooks will be collected by the Courtroom Deputy Clerk, and will be placed back in the jurors' seats in the jury box at the commencement of the trial on the following day.  At the end of the trial, the jurors will be permitted to take their notebooks to the jury room for use during deliberations.  At the end of deliberations, any notes taken by jurors will be destroyed.

      **(d)**    <u>Questions by Jurors</u>: When appropriate, the Court's practice is to permit jurors to ask questions.  After all counsel have completed their examinations of a witness, jurors will be permitted to submit questions to the witness pursuant to the procedures below.

      **(1)**    During the Court's preliminary instructions, jurors will be told that they will be permitted to submit <u>written</u> questions to the Court after counsel have completed their examinations of a witness.  The Court's preliminary instructions will also include an admonition

to the jurors that if they decide to ask a question, that they should do so as a neutral judge of the

facts and not as a partisan advocate for one side or the other.  Moreover, the jurors will be told

that the Court may not be able to ask a witness a proposed question for legal reasons and that if

that occurs, the jurors must act as if the question was never submitted to the Court, and they

cannot speculate about what the answer would have been.

**(2)** When a written question is submitted by a juror, the question will be

reviewed by the Court with counsel, who will be given the opportunity to lodge any objections.

The Court will either sustain the objection and not submit the question to the witness or overrule

the objection and submit the question to the witness through the Court.

**(3)** After jurors' questions are asked, counsel will be given an opportunity to

ask additional questions pertinent to the questions submitted by the jurors and posed to the

witnesses.

**(e)** <u>Opening Statements</u>: Except for especially complex cases, or as otherwise

authorized by the Court, opening statements shall be limited to no more than thirty (30) minutes

per side.  Counsel will be admonished by the Court should their opening statements stray into

forbidden argument, as opposed to a straightforward statement of what the evidence will show.

Counsel are expected to object if improper statements are made by opposing counsel during

opening statements.

**(f)** <u>General Courtroom Rules</u>: Again, the Court expects counsel to exercise civility at

all times towards everyone related to the case or working with the Court.

**(1)** Counsel are not required to question witnesses from the lectern.  When

counsel do not question witnesses from the lectern, they must use a handheld or lapel

microphone.  Neither the handheld nor lapel microphone shall ever be removed from the

courtroom.

**(2)**      When questioning a witness, counsel shall obtain permission from the Court before approaching the witness if, for example, counsel desire to show the witness a document, or for any other reason.

**(3)**      Counsel are reminded that the Court will enforce the traditional rules regarding opening statements and closing arguments, e.g., no personal opinions and no personal attacks on opposing counsel.

**(4)**      All objections or other statements by counsel shall be made while standing.

**(5)**      All statements by counsel must be directed to the Court and not to opposing counsel, unless permission is obtained from the Court to address opposing counsel directly.

**(6)**      Counsel are reminded to secure leave from the Court before posing questions or engaging in procedures, in the presence of the jury, that carry a risk of undue prejudice, or that by law or customary procedures require judicial pre-approval.

**(7)**      During the interrogation of witnesses, counsel shall refer to all witnesses under interrogation, including their clients, as "Mr.," "Sir," "Ms.," "Mrs.," or "Ma'am."  The use of first names or nicknames is prohibited.

**(g)**      <u>Motions in Limine</u>: The parties are expected to file any such motions in accordance with any order that is issued in the case.  Such motions will be decided either on the papers, when possible, or after a hearing, if the Court decides that a hearing is necessary.  The Court expects counsel to file motions <u>in limine</u> regarding any issues that they believe will be contested at trial.  If another issue does not become apparent to counsel sufficiently in advance of

a scheduled motions hearing for a written motion to be filed, counsel shall contact the Court's
chambers for instructions regarding how the matter should be handled.  Any issues that arise
after the trial has begun shall be handled according to the procedures set forth in the next
paragraph this Order.

**(h)** <u>New Issues Needing Court Rulings</u>: Each party must notify the Court and the
other parties in writing by no later than 7:00 a.m. each day of any issues that the party will ask
the Court to resolve before or during that day of trial.  (The parties are highly encouraged to
submit these objections and responses on the evening preceding the next trial day whenever
possible.)  The parties must send such notice to the Court and other counsel by facsimile, e-mail,
or by hand delivery.  Chambers' facsimile number is (202) 354-3292.  The opposing party must
submit its response, if any, by 8:00 a.m. to the Court and to all parties.  Such response must also
be submitted by facsimile, e-mail, or hand delivery.

**(i)** <u>Objections at Trial</u>: Counsel who lodge objections before a jury must state merely
the legal basis for their objections, i.e., hearsay, relevancy, etc., without elaboration or argument,
and the Court will rule on the objection without additional discussion whenever possible.  Bench
conferences are discouraged.  For purposes of "protecting the record" for appellate review, if a
bench conference was not conducted following an objection, counsel may explain or amplify
their objections, on the record, after the jury has been excused for a break, lunch, or at the end of
the day.  However, counsel may request an immediate bench conference if counsel believe it is
absolutely necessary to do so to avoid an injustice or reversible error.

**(j)** <u>Defendant's Presence at Bench Conferences</u>: The presence of a defendant at the
bench during a bench conference will not be permitted.  However, at the defendant's request, the

Court will provide headphones for the defendant so that the defendant can listen to the bench conferences.

**(k)**    Voir Dire: The Court's voir dire and jury selection practices are attached to this General Order as an addendum.

**(l)**    Exhibit Lists: Unless otherwise indicated by the Court, all of the parties' exhibits are to be marked numerically in advance of trial, and the written list of the exhibits along with a brief description of each exhibit must be submitted to the Court and opposing counsel at least three (3) days before the trial commences.

**(m)**    Jencks Act: Government and defense counsel are encouraged to disclose Jencks Act statements to opposing counsel sufficiently in advance of a witness's direct examination so as to give opposing counsel the opportunity to review it and avoid the necessity of a recess after the completion of the witness's direct testimony.  The proponent of a witness shall also have available for testimony individuals who heard or recorded Jencks or reverse Jencks statements in the event opposing counsel needs the testimony of such individuals to complete the impeachment of a witness who is cross-examined with a Jencks qualified statement.

**(n)**    Technical Equipment: Counsel who intend to use the technical equipment in the courtroom shall schedule a tutorial regarding the use of such equipment with the Courtroom Deputy Clerk no later than five (5) days before trial begins, unless they are already familiar with the equipment.  Counsel who wish to use other technical equipment during the trial to present exhibits (e.g., x-ray view boxes, video display monitors, overhead projectors, etc.) must make their own arrangements for the presence and operation of the equipment.  Questions concerning the use of all technical equipment should be directed to the Courtroom Deputy Clerk

**(o)**      Rule on Witnesses: Except for the defendant, all other potential witnesses, unless

otherwise authorized, e.g., expert witnesses upon request, shall remain outside the courtroom

except while testifying.  Counsel shall instruct witnesses not to discuss their testimony after they

leave the witness stand, both during and after the completion of their testimony.  Except for the

defendant (because of Sixth Amendment implications), counsel calling a witness to testify shall

have no further discussions with that witness concerning any aspect of the testimony already

given or anticipated after the witness has been tendered for cross-examination and until such

time as the witness has been tendered back for redirect examination.  Persons who are assisting

or associated with the attorney who calls a witness (e.g., law enforcement officers and defense

investigators) will also abide by these constraints.  Regarding defendants who decide to testify,

counsel are directed to the District of Columbia Circuit's opinion in United States v.

McLaughlin, 164 F.3d 1 (D.C. Cir. 1998), cert. denied, 119 S. Ct. 1485 (1999).

**(p)**      Placing Witnesses on Call: Once the trial begins, witnesses may be put on call at

the peril of the calling party.  The trial will not be recessed because a witness who is on call is

unavailable, except in extraordinary circumstances.  The Court will endeavor to accommodate

witnesses with special problems, e.g., employment, child care, out-of-town witnesses, and expert

witnesses, if counsel alert the Court ahead of time of the situation.  The party calling a witness

shall arrange for that witness's presence until cross-examination is completed.  The failure to

have a witness present for cross-examination following direct examination is ground to strike the

witness's testimony.

**(q)**      Presence of Counsel: Once court is in session, lead counsel shall not leave the

courtroom without the Court's permission.

**(r)**      Sua Sponte Jury Instructions: The necessity for a sua sponte jury instruction shall

be raised by the party seeking the instruction at the earliest possible time.  Failure to do so may

be deemed to constitute a waiver of any such request.  In the event the instruction is given, it

shall be counsel's responsibility to remind the Court of the necessity for inclusion of the <u>sua</u>

<u>sponte</u> instruction in its final charge.  Counsel shall do so by 4:00 p.m. of the afternoon prior to

the day the jury is to receive the final charge from the Court.

      **(s)**    <u>Verbal or Facial Contact with the Jury</u>: Counsel shall not make any verbal, facial,

or other contact with the jury that would be interpreted as conveying a comment related to the

circumstances or developments of the trial.

      **(t)**    <u>Direct and Cross-Examination</u>: On direct or cross-examination of a witness,

counsel shall not:

      **(1)**    in effect personally present testimony by improperly incorporating facts

into their questions for which they do not have a good-faith basis for asking;

      **(2)**    use an objection as an opportunity to argue or make a speech in the

presence of the jury;  or

      **(3)**    show the jury a document or anything else that has not yet been received

into evidence without leave of the Court.

      **(u)**    <u>Closing Arguments</u>: In making closing arguments, counsel shall be limited to the

evidence presented during trial and are reminded of the prohibition against appealing to the

jurors' prejudices.  Moreover, during closing arguments and throughout the trial, counsel shall

<u>not</u>:[7]

      **(1)**    comment adversely on the failure of any defendant to testify on his or her

own behalf;

---

[7] Counsel should be mindful that should they engage in the activity described, the Court may impose a <u>sua sponte</u> objection.

14

**(2)**      make statements of personal belief to the jury;

**(3)**      make personal attacks on opposing counsel in the case;

**(4)**      appeal to the self-interests of the jurors;

**(5)**      make potentially inflammatory racial, political, or religious comments;

**(6)**      state any personal opinions concerning the credibility of witnesses or that imply personal knowledge of the witnesses' credibility;

**(7)**      argue inferences from matters that are not in evidence or that have been excluded, or argue facts not in evidence;

**(8)**      allude to the appellate processes;

**(9)**      make any remarks likely to invoke the jury's sympathy or to excite the jury's prejudices and passions;

**(10)**     make any statements regarding the consequences of the jury verdict, including any "messages to society" by the verdict or the potential punishment for the crime;

**(11)**     make any "golden rule" type arguments; for example, the government shall not ask members of the jury to place themselves or one of their relatives in the shoes of the victim, and the defense counsel shall not ask any one of the jurors to place themselves or one of their loved ones in the shoes of the defendant; or

**(12)**     interject race into the case where there is nothing in the record that warrants race being raised as an issue.

**(v)**      <u>Photographs of Witnesses</u>: Prior to the final instruction of the jury, counsel for each party shall furnish to the Court current photographs of all witnesses called during the course of the trial.  Government counsel shall be responsible for providing photographs of the witnesses called by the government, and defense counsel shall be responsible for providing photographs of

the witnesses called by the defendant.  Each photograph should closely resemble the witness as he or she appeared at trial (e.g., current hairstyle, facial hair, etc.).  The Court will then provide these photographs to the jury to aid its recollection during deliberations.

**(w)**    <u>Final Jury Instructions</u>: The Court will tape record its instructions, and the tape recording of the instructions along with written copies of the instructions, will be sent to the jury room with the jury when it commences its deliberations.  Proposed instructions submitted by counsel shall include the instructions contained in the most recent addition of the Criminal Jury Instructions for the District of Columbia.  If any other version of the proposed instructions are submitted, counsel shall specifically advise the Court of this fact in a separate filing.

**(x)**    <u>Alternate Jurors</u>: Although alternate jurors will be excused prior to deliberations, they must remain available to join the deliberations in the event deliberating jurors cannot continue to participate in the deliberations.  Accordingly, counsel may not speak or have contact with the alternates until after a verdict has been returned.

**(y)**    <u>Deliberations</u>: At the beginning of deliberations, the Court will send the jury all admitted exhibits, the written and tape recorded jury instructions, and the verdict form and any special interrogatories that the Court has decided to use.  In addition, jurors will be able to take their notebooks with them during their deliberations.

Throughout jury deliberations, counsel must be available on twenty (20) minutes notice in order for the Court to respond expeditiously to any jury notes or a verdict.  Counsel who choose not to remain in the immediate vicinity of the courtroom must provide the Courtroom Deputy Clerk with their telephone numbers.

Unless counsel object, the jury will not be brought into the courtroom to be excused at the end of the day if a verdict has not been reached.  Nor will the jury be brought into the

16

courtroom before resumption of deliberations when it returns the following day.  Instead, the Courtroom Deputy Clerk will excuse the jury from the jury room at the end of the day and collect all exhibits, notebooks, and verdict forms.  These items will be returned to the jury room when the jury returns the next morning to continue its deliberations.

Although counsel are permitted to question jurors about the case and the verdict after deliberations have concluded, they cannot do so in a manner that is intimidating, insulting, or critical.

## XII.    **Sentencing**.

Immediately upon receipt of the presentence report, counsel must review it and advise opposing counsel and the probation officer that counsel intend to raise objections to the report. If the objection made to the probation officer is not resolved, counsel must then reduce the objections to writing and file the objections with the Court and serve them on opposing counsel and the probation office.  If the objection process is going to interfere with the scheduled sentencing date, counsel shall file a motion with the Court requesting a continuance.  If counsel intends to submit a written memorandum in aid of sentencing, counsel shall file it with the Court and serve it on opposing counsel at least five (5) days before the scheduled sentencing date.  If counsel will be unable to comply with this time requirement because the presentence report was recently received, counsel must immediately file a motion seeking a continuance of the sentencing hearing.

**SO ORDERED** this 14th day of June, 2022.

REGGIE B. WALTON
United States District Court Judge

**ADDENDUM**

**Jury Selection Process in Criminal Cases Assigned to Judge Reggie B. Walton**

1.      Proposed voir dire questions must be submitted to the Court at least seven (7) days before the scheduled trial date electronically in Microsoft Word.  The parties must send a copy of the proposed voir dire questions by e-mail to the Court.  Failure to comply with this requirement will be deemed a waiver and/or sanctions will be imposed if the Court decides to entertain untimely voir dire requests.

2.      The Court will advise the parties as to when they are to submit their proposed voir dire questions to the Court and opposing counsel.  Upon reviewing the parties' proposed questions, the Court will inform the parties in writing as to which questions will be asked.

3.      Federal Rule of Criminal Procedure 24(b) and (c) will govern the number of peremptory challenges that each party will have.

4.      On the first day of the trial, an appropriate number of potential jurors will be obtained from the Jury Office when the selection process is ready to proceed.

5.      When the jury arrives from the Jury Office, counsel will be provided with the written list of the venire.

6.      The jurors will be seated in the courtroom by the Courtroom Deputy Clerk in the order in which they appear on the jury list.  The seating arrangement will start with the first juror being placed in the seat next to the wall on the first row of seats located on the right side of the courtroom as viewed from the bench looking toward the rear of the courtroom.  Subsequent jurors will be seated in sequential order as listed on the jury list on the first row until all seats are occupied.  Thereafter, jurors will be seated in the same manner on additional rows until all jurors are seated.

7.      The same seating arrangement will be employed on the left side of the courtroom if that space is needed to seat the entire venire.  Once all of the jurors are seated, they will be placed under oath and the Court will make a statement about jury service and its importance. The Court will then ask the jurors collectively the voir dire questions the Court agreed to ask the venire.  The jurors will designate, on a form provided to them by the Courtroom Deputy Clerk, the questions to which they have affirmative responses.  The Court will then use this form to conduct its individual questioning of the jurors.

8.      After all of the voir dire questions have been asked and the numbers of the jurors who have affirmative responses have been recorded, the entire venire will be taken to another courtroom with instructions that they should not discuss the case or the voir dire questions until they are individually returned to the courtroom for further questions.  The potential jurors will then be individually returned to the courtroom for individual questioning by the Court and counsel.  All potential jurors will be individually questioned because in the Court's experience, even potential jurors who have failed to indicate when completing their forms that they have affirmative responses to the voir dire questions, will nevertheless provide affirmative responses when returned to the courtroom for individual questioning.[8]

9.      Strikes for cause will be entertained immediately after the individual questioning of each potential juror.

10.      Depending upon the number of alternate jurors the Court decides to empanel, the twelve (12) non-alternate potential jurors and the alternates will be placed in the jury box in designated seats.  Specific seats will have been assigned for the alternates but their identities as alternate seats will only be made known to counsel and their clients.  Concealment of the

---

[8]  In the event another courtroom is not available to house the venire when the individual questioning is conducted, the individual inquiries will be conducted in the Court's jury room.

alternate jurors' identities will be maintained until the jury is ready to commence deliberations.

11.     During the first six (6) rounds of peremptory strikes on the non-alternate jurors, the government on each round will exercise its strikes first, followed by the defendant who on rounds one through four will exercise two strikes, and on the last two rounds one strike.  The parties are permitted to strike potential jurors in the venire who were not placed in the jury box; however, strikes on the yet-to-be-seated jurors can only be exercised against those potential jurors who actually have the potential of being empaneled if both sides were to exercise all of their strikes.  A pass by either party counts as a strike.  If the government fails to exercise a strike on a round and the defendant also fails to exercise a strike on that same round, the peremptory striking process on the non-alternates will be deemed completed.  In  multiple defendant cases an alternative process concerning passes will be devised based upon the number of codefendants. That process will be explained to counsel before the jury selection process begins.

12.     In the event there are multiple defendants in a case, when practicable, each defendant will be provided with an equal number of peremptory strikes.  The order in which strikes will be exercised on the non-alternate jurors will start with the government followed by the defendants exercising one strike each during the first six rounds (unless the defense is awarded more than ten challenges) in the order previously designated either by agreement of the defendants or as designated by the Court if an agreement cannot be reached as to which defendant will proceed first.  On the final four rounds of peremptory strikes on the non-alternate jurors, the government will proceed first followed by one of the defendants on each of the last four rounds exercising their strikes in the order as designated above.

13.     In a single defendant case, peremptory strikes on the alternate juror(s) will be exercised by the government proceeding first on each round, followed by the defendant.  In

multiple defendant cases, when practical, each defendant will be given an equal number of peremptory strikes for the alternate jurors.

14.     Potential jurors who are stricken will not be excused from the courtroom until the entire selection process has been completed, including the resolution of any <u>Batson</u> challenges.

15.     In the event a <u>Batson</u> challenge is raised and found to be meritorious, counsel are forewarned that one remedy the Court may employ is to impanel the improperly stricken potential juror on the jury and preclude the party who improperly exercised the strike from excluding that juror.  An array of other remedies are available to the Court, including the imposition of monetary sanctions, to address <u>Batson</u> violations.  Counsel should, therefore, be mindful of their obligation not to exercise peremptory challenges that seek to exclude potential jurors on the basis of their race, gender, ethnicity, or any other protected characteristic.