IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : <br> : <br> : No. 22-cr-100-RBW <br> : |
| v. | : <br> : |
| JACOB L. ZERKLE, | : <br> : |
| *Defendant*. | : <br> : |

**DEFENDANT'S MOTION *IN LIMINE* TO
EXCLUDE IMPROPER CASE AGENT TESTIMONY**

Defendant Jacob L. Zerkle, through his undersigned counsel, and pursuant to Federal Rule of Evidence 602, files the present motion seeking to exclude evidence and testimony by the Government's case agent as to the case agent's interpretation and narration of what occurred in video footage reflecting interactions between Mr. Zerkle and members of the Metropolitan Police Department on January 6, 2021, of which the case agent has no personal knowledge.

**FACTUAL BACKGROUND**

Jacob Zerkle, a farmer from Arizona, traveled to Washington, D.C. and was present in the city on January 6, 2021. Mr. Zerkle spent the entire day walking up and down the National Mall. He went to Arlington National Ceremony and the Lincoln Memorial, passed the Washington Monument, and traveled to the area surrounding the United States Capitol twice. He took photographs, talked to other individuals visiting the city, and participated in a protest that was occurring that day.

That afternoon, the protest outside the United States Capitol became violent, and ultimately resulted in individuals breaking windows and doors to enter the Capitol building. To be clear, Mr.

Zerkle *never* went into the United States Capitol, *never* wanted to go into the United States Capitol, and *never* attempted to go into the United States Capitol, and the Government does not allege otherwise. Mr. Zerkle was not arrested nor detained by anyone on January 6, 2021 for his actions. He did not have a weapon of any kind. He did not steal or deface any property. Mr. Zerkle has no history of violent or assaultive conduct and his criminal history consists of a traffic offense and littering charge (from 20 years ago).

Yet, after attending multiple consent meetings with agents and law enforcement officers in Arizona, participating in a debrief with prosecutors remotely in Washington, D.C., providing written consent to allow law enforcement to access certain social media accounts, voluntarily disclosing photographs, and offering to provide the clothing that he wore on January 6, Mr. Zerkle still finds himself charged with multiple felony offenses for allegedly assaulting officers.

Specifically, the Government claims that, during an approximate 29-second period of time, Mr. Zerkle resisted being pushed out of the way and hit with a baton by fully armed riot police from the Civil Disturbance Unit ("CDU") of the Metropolitan Police Department ("MPD"), who were admittedly pushing people back and yelling, "Move." As will be established at trial, not a single officer was harmed in any way or suffered any injury as a result of any action undertaken by Mr. Zerkle. Not a single officer alleged to have been injured by Mr. Zerkle. Not a single officer filed a report that they were assaulted by Mr. Zerkle. Not a single officer filed a use of force report for that day regarding conduct relating to Mr. Zerkle. Not a single officer attempted to make further contact with Mr. Zerkle after he was pushed away. And, not a single officer sought to arrest Mr. Zerkle on scene or to open an investigation into his conduct. Following the 29-second period of time at issue in this case, Mr. Zerkle left the area surrounding the United States Capitol and went

2

home, while hundreds of others present that day went the opposite direction and entered the Capitol building.

Mr. Zerkle is before this Court because the Federal Bureau of Investigation ("FBI") seized all of MPD's body worn camera footage from January 6, 2021, ran that footage through face recognition software, and, after identifying Mr. Zerkle, the U.S. Attorney's Office believed felony assault charges should be brought for making contact with officers.[1]

During the course of the Department of Justice's investigation of Mr. Zerkle, which took over a year, Mr. Zerkle was identified as a different person twice and one MPD officer, when speaking to the FBI, had no recollection of encountering Mr. Zerkle. Enclosed are screenshots and photographs of Mr. Zerkle and his subsequent contact with law enforcement on January 6, 2021. Consistent with a photograph of him at the Lincoln Memorial, which he voluntarily provided to law enforcement, Mr. Zerkle wore a long leather jacket and khaki pants and was never observed to be in possession of any object, weapon, or item that would put any individual, especially a police officer, in the reasonable apprehension of fear. He did carry a backpack that day to hold his bottled water.

---

[1] The conduct alleged in this case, if proven beyond a reasonable doubt at trial, would not rise above misdemeanor simple assault under the D.C. Code. Felony assault of an officer under D.C. Code § 22-405(c) requires "significant bodily injury" or "a violent act that creates a grave risk of causing significant bodily injury." No such conduct occurred in this case and the Government does not assert otherwise. Even if Mr. Zerkle had committed a simple assault of an MPD officer, and the U.S. Attorney's Office actually papered a charge based on a resistance theory (which the D.C. Council is actually trying to remove from as a basis of criminal liability in D.C.), the U.S. Attorney's Office would have permitted him to be eligible for a Deferred Prosecution Agreement or a Deferred Sentencing Agreement. And, even if such diversion, which is routinely offered, was not offered, Mr. Zerkle would have almost certainly received a probationary sentence if convicted under the current sentencing practices and statistics in that Court. Here, the Government has charged Mr. Zerkle with three separate felonies for purportedly resisting three separate officers, each with a maximum period of incarceration of eight years.



In contrast to his leather jacket and khaki pants, the law enforcement officers Mr. Zerkle encountered were wearing riot gear, with protective helmets, shields, and body armor, and each was equipped with an extended baton. Photographs of some of the officers in the riot battalion that Mr. Zerkle encountered are shown below:



Certain screenshots of body worn camera footage show Mr. Zerkle putting his hand up and ducking down and away as an officer raises his fist toward him:



In the photograph below, Mr. Zerkle is putting his hand up near his face as an officer raises his fist toward him:



Approximately nine seconds later, Mr. Zerkle is crouching down and covering his head as an officer is grabbing him:









In the photograph below, Mr. Zerkle is moving away from the officer, as shown by Mr. Zerkle's backpack facing the officer's camera, while the officer grabs after Mr. Zerkle:



Seconds later, Mr. Zerkle is heading away from the officer with his back to the officer, while being pushed away by the officer:



Additional photographs of Mr. Zerkle, used by the Government to identify him in this case, depict Mr. Zerkle putting his hand up to law enforcement and withdrawing back in response to officers making contact with him:

8



Photograph #335 - AFO L

Photograph #335 - AFO K

Photograph #335 - AFO J

Photograph #335 - AFO E

Mr. Zerkle's brother, who was standing next to him on January 6, 2021 and was eventually hit by law enforcement (and who was not charged), is shown terrified that he would be injured:

## ARGUMENT

As will be established at trial, no Metropolitan Police Department ("MPD") officer alleged that they had been assaulted by Jacob Zerkle on January 6, 2021. No MPD officer filed any police report or undertook any investigation related to Mr. Zerkle. No MPD officer completed an injury report as a result of any actions taken by Mr. Zerkle. No MPD officer filed any use of force report regarding an encounter with Mr. Zerkle. Rather, the United States Attorney's Office and the Federal Bureau of Investigation ("FBI") initiated this prosecution based on 29 seconds of events that took place outside the United States Capitol, prior to the breach of the Capitol, and that did not result in any injuries to police officers or the use of any weapon by Mr. Zerkle, who was free to leave the area and did shortly thereafter, without ever entering the Capitol.

The affiant to the statement of facts in support of the criminal complaint against Mr. Zerkle, and the sole witness before the grand jury that returned an Indictment in this matter, was FBI Special Agent ("SA") Bret Curtis, the Government's case agent. Rather than the MPD officers who made contact with Mr. Zerkle for a 29-second period outside the United States Capitol on January 6, 2021, it has been SA Curtis who has described and testified to what he believes occurred

in this case, based on his review of surveillance video and body worn camera video, and through interviewing Mr. Zerkle and certain MPD officers.

It is believed that the Government intends to call SA Curtis as a witness at trial, to narrate and describe the contents of the videos from January 6, 2021 that the Government plans to introduce into evidence. Mr. Zerkle objects to such testimony.[2] Pursuant to Federal Rule of Evidence 602, a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Here, SA Curtis was not present when the events contained in the videos occurred. SA Curtis therefore lacks personal knowledge of the actions taken by the individuals depicted in the videos, especially as to what the individuals observed and did that was not recorded, and he should not be permitted to testify regarding the videos. *See*, *e.g.*, *Callaham v. United States*, 268 A.3d 833, 847-48 (D.C. 2022) (considering the potential of officers, during retrial, "narrat[ing] the contents of the video[-]recordings despite not having witnessed the events depicted in the videos in real time," and "reaffirm[ing] the requirement that lay witness testimony generally must be based on personal knowledge, whether it is proffered as fact or opinion" and "reject[ing] the government's argument

---

[2] It is also believed that the Government will have SA Curtis sit at Government counsel's table. Mr. Zerkle objects to such an exception to the sequestration rule. Federal Rule of Evidence 615 provides that, at the request of a party, the Court must order witnesses excluded so that they cannot hear the testimony of other witnesses. Fed. R. Evid. 615(b). "The sequestration rule serves two primary purposes: to prevent a witness from tailoring his testimony in light of the testimony of other witnesses, and to permit the discovery of false testimony and other problems relating to credibility." *Minebea Co., Ltd. v. Papst*, 374 F. Supp. 2d 231, 233 (D.D.C. 2005). The "sequestration process involves three parts: preventing prospective witnesses from consulting each other; preventing witnesses from hearing other witnesses testify; and preventing prospective witnesses from consulting witnesses who have already testified." *United States v. Sepulveda*, 15 F.3d 1161, 1176 (1st Cir. 1993). Permitting SA Curtis to sit at Government counsel's table would constitute an unnecessary exception to Rule 615. This is not a multi-week, multi-defendant, complex conspiracy case. And, Mr. Zerkle plans to list SA Curtis as a defense witness, so he should not be permitted to hear the defense opening or the examination of defense witnesses when he himself is a potential witness for the defense.

that the detectives 'witnessed' the events in question—and thereby obtained personal knowledge of them—solely by watching recorded surveillance footage"); *see also id.* at 848 n.21 (citing *Boyd v. Commonwealth*, 439 S.W.3d 126, 131-32 (Ky. 2014) (concluding witnesses lacked personal knowledge of events captured in video when they "did not perceive [the events] in real time"); *United States v. Shabazz*, 564 F.3d 280, 287 (3rd Cir. 2009) (affirming conviction where trial court expressly limited witness's narration of surveillance video to the portions showing events to which he was an eyewitness).

Additionally, the Government can call the MPD witnesses, who do allegedly have personal knowledge of the events at issue in this case, or present the videos without narration, as the footage speaks for itself. SA Curtis need not be permitted to narrate what is depicted in the videos when he was not present during the events at issue and therefore lacks personal knowledge of the actions contained therein. Allowing the Government to proceed in this manner would prohibit the defense from cross-examining the actual witnesses about their actions on the day in question and their recollections, based on their personal knowledge or lack thereof.

For all the reasons, Mr. Zerkle requests that his motion *in limine* be granted.

Dated: February 10, 2023           Respectfully submitted,

                                                    /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Jacob Zerkle*