IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : : : : | No. 22-cr-100-RBW |
| v. | : : : |  |
| JACOB L. ZERKLE, | : : : |  |
| *Defendant*. | : : |  |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE AND TESTIMONY RELATING TO THE BREACH
OF THE UNITED STATES CAPITOL AND OTHER RELATED TOPICS**

Defendant Jacob L. Zerkle, through his undersigned counsel, and pursuant to this Court's Pre-Trial Scheduling Order (D.E. 22) and the Federal Rules of Evidence, files the present motion seeking to exclude evidence, testimony, and arguments regarding the breach of the United States Capitol and other related topics.

**SUMMARY OF ARGUMENT**

On January 6, 2021, Mr. Zerkle, a farmer from Arizona, spent the entire day walking up and down the National Mall. He went to Arlington National Ceremony and the Lincoln Memorial, passed the Washington Monument, and traveled to the area surrounding the United States Capitol twice. He took photographs, talked to other individuals visiting the city, and participated in protests that were occurring that day. One of the protests ultimately became violent, and resulted in hundreds of individuals storming and entering the United States Capitol. To be clear, Mr. Zerkle *never* went into the United States Capitol, *never* wanted to go into the United States Capitol, and *never* attempted to go into the United States Capitol. He was not arrested nor detained by anyone on January 6, 2021 for his actions that day.

Notwithstanding, Mr. Zerkle is now charged with multiple felony offenses for allegedly resisting being pushed out of the way and hit with a baton in a 29-second encounter with law enforcement that occurred prior to the breach of the United States Capitol. As Mr. Zerkle's actions and charges do not involve storming or otherwise entering the United States Capitol, obstructing an official proceeding, or destroying or stealing property inside the United States Capitol, Mr. Zerkle seeks an Order excluding any evidence, testimony, and arguments regarding those matters (and the purported motivation for those matters) from his trial in this case.

## FACTUAL BACKGROUND

Jacob Zerkle, a farmer from Arizona, traveled to Washington, D.C. and was present in the city on January 6, 2021. Mr. Zerkle spent the entire day walking up and down the National Mall. He went to Arlington National Ceremony and the Lincoln Memorial, passed the Washington Monument, and traveled to the area surrounding the United States Capitol twice. He took photographs, talked to other individuals visiting the city, and participated in a protest that was occurring that day.

That afternoon, the protest outside the United States Capitol became violent, and ultimately resulted in individuals breaking windows and doors to enter the Capitol building. To be clear, Mr. Zerkle *never* went into the United States Capitol, *never* wanted to go into the United States Capitol, and *never* attempted to go into the United States Capitol, and the Government does not allege otherwise. Mr. Zerkle was not arrested nor detained by anyone on January 6, 2021 for his actions. He did not have a weapon of any kind. He did not steal or deface any property. Mr. Zerkle has no history of violent or assaultive conduct and his criminal history consists of a traffic offense and littering charge (from 20 years ago).

Yet, after attending multiple consent meetings with agents and law enforcement officers in Arizona, participating in a debrief with prosecutors remotely in Washington, D.C., providing written consent to allow law enforcement to access certain social media accounts, voluntarily disclosing photographs, and offering to provide the clothing that he wore on January 6, Mr. Zerkle still finds himself charged with multiple felony offenses for allegedly assaulting officers.

Specifically, the Government claims that, during an approximate 29-second period of time, Mr. Zerkle resisted being pushed out of the way and hit with a baton by fully armed riot police from the Civil Disturbance Unit ("CDU") of the Metropolitan Police Department ("MPD"), who were admittedly pushing people back and yelling, "Move." As will be established at trial, not a single officer was harmed in any way or suffered any injury as a result of any action undertaken by Mr. Zerkle. Not a single officer alleged to have been injured by Mr. Zerkle. Not a single officer filed a report that they were assaulted by Mr. Zerkle. Not a single officer filed a use of force report for that day regarding conduct relating to Mr. Zerkle. Not a single officer attempted to make further contact with Mr. Zerkle after he was pushed away. And, not a single officer sought to arrest Mr. Zerkle on scene or to open an investigation into his conduct. Following the 29-second period of time at issue in this case, Mr. Zerkle left the area surrounding the United States Capitol and went home, while hundreds of others present that day went the opposite direction and entered the Capitol building.

Mr. Zerkle is before this Court because the Federal Bureau of Investigation ("FBI") seized all of MPD's body worn camera footage from January 6, 2021, ran that footage through face recognition software, and, after identifying Mr. Zerkle, the U.S. Attorney's Office believed felony

assault charges should be brought for making contact with officers.[1] During the course of the Department of Justice's investigation of Mr. Zerkle, which took over a year, Mr. Zerkle was identified as a different person twice and one MPD officer, when speaking to the FBI, had no recollection of encountering Mr. Zerkle. Enclosed are screenshots and photographs of Mr. Zerkle and his subsequent contact with law enforcement on January 6, 2021. Consistent with a photograph of him at the Lincoln Memorial, which he voluntarily provided to law enforcement, Mr. Zerkle wore a long leather jacket and khaki pants and was never observed to be in possession of any object, weapon, or item that would put any individual, especially a police officer, in the reasonable apprehension of fear. He did carry a backpack that day to hold his bottled water.



---

[1] The conduct alleged in this case, if proven beyond a reasonable doubt at trial, would not rise above misdemeanor simple assault under the D.C. Code. Felony assault of an officer under D.C. Code § 22-405(c) requires "significant bodily injury" or "a violent act that creates a grave risk of causing significant bodily injury." No such conduct occurred in this case and the Government does not assert otherwise. Even if Mr. Zerkle had committed a simple assault of an MPD officer, and the U.S. Attorney's Office actually papered a charge based on a resistance theory (which the D.C. Council is actually trying to remove from as a basis of criminal liability in D.C.), the U.S. Attorney's Office would have permitted him to be eligible for a Deferred Prosecution Agreement or a Deferred Sentencing Agreement. And, even if such diversion, which is routinely offered, was not offered, Mr. Zerkle would have almost certainly received a probationary sentence if convicted under the current sentencing practices and statistics in that Court. Here, the Government has charged Mr. Zerkle with three separate felonies for purportedly resisting three separate officers, each with a maximum period of incarceration of eight years.

In contrast to his leather jacket and khaki pants, the law enforcement officers Mr. Zerkle encountered were wearing riot gear, with protective helmets, shields, and body armor, and each was equipped with an extended baton. Photographs of some of the officers in the riot battalion that Mr. Zerkle encountered are shown below:



Certain screenshots of body worn camera footage show Mr. Zerkle putting his hand up and ducking down and away as an officer raises his fist toward him:



In the photograph below, Mr. Zerkle is putting his hand up near his face as an officer raises his fist toward him:



Approximately nine seconds later, Mr. Zerkle is crouching down and covering his head as an officer is grabbing him:









In the photograph below, Mr. Zerkle is moving away from the officer, as shown by Mr. Zerkle's backpack facing the officer's camera, while the officer grabs after Mr. Zerkle:



Seconds later, Mr. Zerkle is heading away from the officer with his back to the officer, while being pushed away by the officer:



Additional photographs of Mr. Zerkle, used by the Government to identify him in this case, depict Mr. Zerkle putting his hand up to law enforcement and withdrawing back in response to officers making contact with him:



Mr. Zerkle's brother, who was standing next to him on January 6, 2021 and was eventually hit by law enforcement (and who was not charged), is shown terrified that he would be injured:

**ARGUMENT**

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the

9

practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). *In limine* rulings are an important mechanism to effectuating the goal of insulating the jury from inadmissible evidence and further the purpose of the rules, generally, to administer the proceedings "fairly . . . to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102. *See also Banks v. Vilsack*, 958 F. Supp. 2d 78, 82 (D.D.C. 2013) (citing Fed. R. Evid. 103(d) and determining that a motion to exclude certain evidence would be decided pretrial "[i]n the interest of conducting an efficient jury trial and preventing the jury from hearing inadmissible evidence"); *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (noting that motions *in limine* "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury"); 21 Charles Alanwright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5042, at 965 (2d ed. 2005) (noting that "the motion in limine . . . still remains a favorite method of the writers for satisfying Rule 103(c)"). Moreover, "[a] pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations." *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).

In evaluating the admissibility of proffered evidence on a pretrial motion *in limine*, this Court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401 and 402. "[T]he burden is on the introducing party to establish relevancy," *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990), as well as admissibility. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Even relevant evidence may be deemed inadmissible and subject to exclusion on multiple grounds, including that "its probative value is substantially outweighed by a danger of one or more

10

of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Assessing the probative value of [the proffered evidence] and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (alteration in original) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). "This is particularly true with respect to Rule 403[.]" *Sprint/United Mgmt. Co.*, 552 U.S. at 384.

Under Rule 403, this Court must "engage in on-the-spot balancing of probative value and prejudice and . . . exclude even factually relevant evidence when it fails the balancing test." *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (punctuation omitted). This balancing test is "fact-based and depends on many factors, including how closely related the evidence is to the [party's] circumstances and theory of the case." *Nuskey v. Hochberg*, 723 F. Supp. 2d 229, 233 (D.D.C. 2010) (quoting *Sprint/United Mgmt. Co.*, 552 U.S. at 387-88). Importantly, "unfair prejudice within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee's notes).

As discussed above, Mr. Zerkle's charges arise from a 29-second encounter with law enforcement outside the United States Capitol prior to the breach of the Capitol, in which Mr. Zerkle did not participate or attempt to participate. Accordingly, Mr. Zerkle requests an Order from this Court excluding from his trial any testimony, evidence, or arguments relating to:

  **(i)**  The breach of the United States Capitol on January 6, 2021;
  **(ii)**  Events that occurred inside the United States Capitol following the breach;
  **(iii)**  Damage caused to the United States Capitol on January 6, 2021;
  **(iv)**  The certification of the election and the consequences of the delay of the

certification;

**(v)**   The dangers to members of Congress, including the President of the Senate, former Vice President Mike Pence, and their staff on January 6, 2021;

**(vi)**   Injuries to law enforcement officers on January 6, 2021;[2]

**(vii)**   The nature of the Government's investigation into the events of January 6, 2021;

**(viii)**   The belief as to the presence of right-wing extremist groups or militia groups at, near, or inside the United States Capitol on January 6, 2021;

**(ix)**   Former President Donald J. Trump and potential conspiracies to overturn the election;

**(x)**   Allegations of voter fraud and election interference as the motivation for the breach of the United States Capitol;

**(xi)**   Plots or actions that would constitute sedition, insurrection, rioting, and/or the overthrowing of democracy.

As none of the above-referenced topics or matters make it more likely than not that Mr. Zerkle was resisting law enforcement officers during a 29-second encounter that preceded the breach of the United States Capitol, the topics are not relevant and, therefore, are inadmissible at trial. *See* Fed. R. Evid. 401, 402. Even if the Government could meet its burden to establish the relevancy of any of these topics, which it cannot, any testimony, evidence, or arguments regarding such topics would still be inadmissible, because any admission would be highly inflammatory and prejudicial, and have the potential to mislead the jury and confuse the issues. Accordingly, Mr. Zerkle respectfully requests that his motion *in limine* to exclude testimony, evidence, and arguments regarding the breach of the United States Capitol and other related topics be granted.

---

[2] The only relevant injuries would be the MPD officers identified in the Indictment, but they are not alleged to have been injured by Mr. Zerkle and the evidence establishes that none were injured in any capacity whatsoever as a result of any action undertaken by Mr. Zerkle.

Dated: February 10, 2023	Respectfully submitted,

      /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Jacob Zerkle*