UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 22-cr-100 (RBW) |
| v. : | |
| : | |
| JACOB L. ZERKLE, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE TO EXCLUDE CASE AGENT TESTIMONY AND CROSS-
MOTION TO PERMIT THE CASE AGENT TO REMAIN IN THE COURTROOM**

Defendant Jacob L. Zerkle is charged in connection with events at the U.S. Capitol on January 6, 2021. He now moves to prohibit the primary FBI agent involved in the investigation of his case from "interpreting or narrating" any video evidence showing D.C. police interacting with the defendant on Jan. 6, 2021. *See* Def. Motion in Limine ("MIL"), Doc. No. 27. In a footnote, the defendant also asks the Court to prohibit the case agent from sitting in trial at counsel's table during trial. *See id.* at 10, n.2. Both requests should be denied.

**I.   BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

Jacob Zerkle travelled to D.C. on January 2, 2021 from Bowie, Arizona by car. On January 6, he was present on Capitol Grounds as members of the Metropolitan Police Department ("MPD") and the U.S. Capitol Police attempted to secure the Capitol Building. Body Worn Camera ("BWC") footage from the Metropolitan Police Department shows Zerkle on the West Front of the Capitol attacking multiple MPD officers.

Based on Zerkle's actions on January 6, 2021, a grand jury returned an eight-count indictment charging Zerkle with: Assaulting, Resisting, or Impeding Certain Officers in Counts 1-3, in violation of 18 U.S.C. § 111(a); Civil Disorder in Count 4 in violation of 18 U.S.C. § 231(a)(3); Entering and Remaining in a Restricted Building or Grounds in Count 5 in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds in Count 6 in violation of 18 U.S.C. § 1752(a)(2); Engaging in Physical Violence in a Restricted Building or Grounds in Count 7 in violation of 18 U.S.C. § 1752(a)(4); and Acts of Physical Violence in the Capitol Grounds or Buildings in Count 8 in violation of 40 U.S.C. § 5104(e)(2)(F).

The defendant now moves to preclude the FBI case agent from narrating any portion of any video evidence that the government may introduce at trial and further to preclude the case agent from sitting at counsel table during the trial. The motion should be denied in all respects.

## II.     CASE AGENT TESTIMONY

In his motion, the defendant asks the Court to preclude the case agent from narrating any evidence showing the defendant interacting with Metropolitan Police Department ("MPD") officers on Jan. 6. Def. MIL at 11. This is an unnecessary and overly broad limitation on the investigating agent's testimony that would improperly prevent the agent from providing useful and relevant testimony regarding his investigation into the defendant's criminal wrongdoing. To be clear, the Government also intends on calling MPD officers to testify regarding their firsthand

experiences with Zerkle on January 6 as the defendant suggests. But to place overinclusive limitations on the case agent's testimony would neither assist in avoiding improper testimony nor would it be helpful in the efficient administration of trial.

Video narration, which is not a stand-alone category of evidence, falls at the intersection of the federal evidentiary rules governing relevance, personal knowledge of a witness, lay opinion testimony, expert testimony, and authenticity. Fed. R. Evid. 401 (Relevance); 602 (Need for Personal Knowledge); 701 (Lay Opinion Testimony); 702 (Expert Witnesses; 703 (Bases of Expert). Just as every other type of evidence must be analyzed in accordance with these rules, so must video narration. The defendant's overly broad motion seeking to exclude all video narration by the case agent at trial ignores the admissibility of relevant and helpful testimony that the agent can offer and that other courts have permitted. Accordingly, the government respectfully requests that the Court deny the defendant's motion and resolve specific objections to the case agent's testimony during trial.

Courts routinely admit video narration by law enforcement witnesses with firsthand knowledge of individuals portrayed in the video for identification purposes or where the law enforcement witness has developed a familiarity with the footage from repeated viewings that is useful to jurors. *See, e.g.*, *United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015) (affirming trial court's admission of video narration by officer offering lay testimony where the officer had viewed the video numerous times and provided details helpful to the jury); *United States v. Begay,* 42 F.3d 486 (9th Cir.1994) (finding no error in the admissibly of officer's lay

opinion testimony under Rule 701 narrating a video of a riot involving 200-300 people where officer had watched video over 100 times and testimony would be helpful to jury);.[1]

*Torralba-Mendia* is particularly instructive here, where video exhibits are expected to be offered into evidence and narrated by a variety of law enforcement witnesses.[2] There, the Ninth Circuit affirmed the defendant's convictions where a law enforcement officer provided extensive narration of video as a lay witness. *Torralba-Mendia*, 784 F.3d at 666. At that human smuggling trial, the government called the case agent, Agent Frazier, to offer both expert and lay witness testimony. *Id.* at 657-58. In his capacity as expert, Frazier testified about the standard practices of alien smuggling organizations. He then testified as a lay witness and narrated surveillance videos that showed cars driving to and from a specific company believed to be involved in the smuggling

---

[1] *See also United States v. Garcia-Zarante*, 419 F. Supp. 3d 1176 (N.D. Cal. 2020) ("Witnesses may narrate and describe events in a video based on their perceptions. They may not speculate as to the intention of other actors captured in the video, nor may they describe the shooting as a murder."); *Humphries v. Brewer*, 2019 WL 3943074 (E.D. Michigan, Southern Div., August 21, 2019) (denying ineffective assistance habeas claims where law enforcement and civilian witnesses narrated apartment surveillance video, had personal knowledge of the physical location in which the video was taken, and the testimony was helpful to the jury); *Hunt v. Davis*, Civ. No. SA-17-CA-0986-XR, 2018 WL 2306900 (W.D. Texas, May 21, 2018) (unpublished opinion) (denying ineffective assistance habeas claim where counsel had "no valid reason" to object to officer's narration of store surveillance video where officers was present during recording and personally witnessed recorded events); *Allen v. Klee*, Case No. 14-cv-13409, 2016 WL 5791189 (E.D. Michigan, Northern Division, Oct. 4, 2016) (denying ineffective assistance habeas claims where non-expert officer narrated video and his opinions were helpful to the jury where he "had the benefit of reviewing the video numerous times, giving him the opportunity to comprehend the events that were transpiring on the video and to determine the identity of the participants."); *James v. People of the Virgin Islands*, 60 V.I. 311, 2013 WL 6585638 (S. Ct. of Virgin Islands, Dec. 12, 2013) (finding no abuse of discretion where surveillance video was admitted and detective with firsthand knowledge of the events narrated video for the jury, although "better practice" for purposes of authenticating the video would have been to have a different detective testify video's accuracy).

[2] While the testimony of a properly-qualified expert is admissible to narrate videos entered into evidence, the United States has not noted an expert in this case and does not intend to call an expert to narrate any videos during trial.

4

conspiracy. *Id.* at 657-58. During his narration, Agent Frazier specifically explained to the jury time lapses in the videos, specific identifying marks on vehicles, how the vehicles related to various conspirators, and the number of people exiting and entering those vehicles. *Id.* at 659-60. Finding that the Frazier's testimony was proper lay testimony, the Court explained:

> Frazier testified that he had watched each video roughly fifty times, and that he would often watch the video feed live while it was being recorded. The narratives helped the jury understand what they were seeing. For example, Frazier provided the length of time lapses between video clips. He pointed out unique characteristics of the vehicles—like their makes, models, and whether any bodywork had been done to them—that helped the jury identify the same cars in subsequent videos. He linked the different cars to specific conspirators. He counted the number of passengers exiting or entering the vehicles (a difficult task because the video's angle obscured the view). And he pointed out the particular clothing of certain passengers, to show that a person dropped off in one video was the same person picked up in a later video. Frazier's narratives were based on his repeated viewing of the recordings, and helped the jury understand the import of the videos.

*Id.* at 659-60. The Ninth Circuit found Frazier's lay testimony video narration to be proper and helpful to the jury.[3] The *Torralba-Mendia* court therefore held that "an officer who has extensively reviewed a video may offer a narration, pointing out particulars that a casual observer might not see." *Torralba-Mendia*, 784 F.3d at 659, *citing Begay,* 42 F.3d at 502-03.

The holding in *Torralba-Mendia* rested in part on the Circuit's prior decision in *Begay*, which is similarly relevant to the question of video narration here. There, the Circuit admitted the testimony of an officer as he narrated video that he had viewed numerous times on the basis that his testimony would be helpful to the jury as lay opinion testimony under Rule 701. *Begay,* 42 F.3d at 502. In *Begay*, appellants were among 32 individuals charged with multiple counts – including conspiracy, robbery, assault, burglary, and kidnapping – related to a riot involving 200-

---

[3] Unrelated to the issue here, the Ninth Circuit found error in the district court's failure to instruct the jury about Frazier's different roles when offering expert and lay testimony but concluded that error was harmless. *Torralba-Mendia*, 784 F.3d at 661.

300 individuals who violently sought to take over the Navajo Nation Administration and Finance Building in Window Rock, Arizona on July 20, 1989. *Id.* at 489, 502.

At trial, Officer Stewart Calnimptewa narrated events depicted in a video, even though he did not have first-hand knowledge of the events in question. *Id.* at 502. Calnimptewa testified that he had viewed the original videotape ("Exhibit 1) "over 100 times" with the aid of a magnifying glass. *Id.* He then "had portions of the videotape copied in slow motion and their quality enhanced to help his identification of the demonstrators and their actions during the incident." *Id.* This altered version of the video was admitted as "Exhibit 105" at trial, over a defense objection. *Id.* Calnimptewa then narrated the video, including explaining the alterations that he had made to the original.

On appeal, the defendant challenged the video narration because Calnimptewa was not qualified as an expert and the testimony was improper under Rule 602 because "Calnimptewa lacked personal knowledge of the events depicted in the videotape." *Id.* at 502. The court rejected the arguments, holding that Calnimptewa's testimony was properly admitted as opinion testimony by a lay witness under Rule 701, where the testimony was "rationally based on [Calnimptewa's] own perceptions and that the testimony would be helpful to the jury." *Id.* at 502. With respect to the witness's perception of the events, the court specifically explained that, under Rule 701,

> Calnimptewa's perceptions need not be based on the "live" events of July 20th because he was not testifying to his eyewitness account of those events. Calnimptewa's testimony concerned only the scenes depicted in Exhibit 105 as extracted from Exhibit 1, the original videotape. Thus, Calnimptewa need only have perceived the events depicted in Exhibit 1.

*Id.* at 502. With respect to whether his testimony regarding the altered video tape would be helpful to the jury, the court emphasized that Calnimptewa's repeated viewing of a video that captured

over 200 people simultaneously would be helpful to a jury, even where the jury had the original unaltered video tape as evidence. The court reasoned that:

> Calnimptewa's testimony about Exhibit 105 was likely to have been helpful to the jury in evaluating Exhibit 1. Although the jury viewed Exhibit 1 in its entirety, it is reasonable to assume that one viewing a videotape of a demonstration involving over 200 people would likely not see certain details, given the tremendous array of events all occurring simultaneously. Officer Calnimptewa spent over 100 hours viewing Exhibit 1. To have the jury do likewise would be an extremely inefficient use of the jury's and the court's time. Therefore, Calnimptewa's testimony concerning which persons were engaged in what conduct at any given moment could help the jury discern correctly and efficiently the events depicted in the videotape.

*Id.* at 503. As with *Torralba-Mendia,* the *Begay* court looked to the relevant evidentiary rules in determining whether the video narration was admissible in the specific context of the trial.

A judge on this Court endorsed the same approach in *Buruca v. District of Columbia et al.*, 902 F. Supp. 2d 75 (D.D.C. 2012) (Contreras, J.). There Judge Contreras granted the District of Columbia's summary judgment motion where the plaintiff submitted only a single affidavit in which she described the contents of video surveillance that was never submitted to the court as evidence. *Id.* at 82-83. In determining that the plaintiff should not be permitted to describe the video without providing the video as evidence, Judge Contreras explained that the "best evidence rule," Fed. R. Evid. 1002, required the video to be submitted. He went on to explain that:

> Even if the best evidence rule did not apply, the court sees no independent reason to allow the plaintiff to narrate the video's content. The plaintiff does not purport to be an expert, whose testimony could be based on the video footage. Fed. R Evid. 703. Nor does the plaintiff claim that she has some unique knowledge that would be helpful to the jury's understanding of the video. *See* Fed. R. Evid. 701(b) (requiring testimony to be "helpful to clearly understanding ... a fact in issue").

*Id.* at 83. In a footnote, Judge Contreras further clarified that "helpful" information could include identifying a person in the video which, as the next of kin to the deceased, the plaintiff was "in a better position than the jury" to do. *Id.* at 83, n. 5.

7

The cases cited by the defendant are unpersuasive and should not be relied upon by this Court. First, the defendant's leading case, *Callaham v. United States*, 268 A.3d 833 (D.C. Ct. of App. 2022), is not binding on this Court and only addresses the pertinent issue in dicta. There, the D.C. Court of Appeals explicitly acknowledged that it "need not address the particulars" of the challenged, narrative testimony, because the court had already decided to reverse and remand the case on other grounds. *See Callaham*, 268 A.3d at 848. Without engaging in a fulsome analysis of the particular testimony sought to be offered by any particular witness, the *Callaham* opinion is unpersuasive.

The defendant also cites *United States v. Shabazz*, 564 F.3d 280 (3rd Cir. 2009), and suggests that *Shabazz* supports the proposition that a witness should be outright prohibited from narrating video evidence unless the witness was an eyewitness to the recorded events. Def MIL at 11. This is not an appropriate reading of *Shabazz*. There, the defendant's appeal challenged a witness's *identification* of the defendant and was not focused on the overall *narration* that the witness offered at trial. *See Shabazz*, 564 F.3d at 286-87. In upholding the trial court's approach to this testimony, the *Shabazz* court considered the witness's testimony in light of Rule 701 and confirmed that the identification of the defendant in the video, which was based upon the co-conspirator's personal knowledge of the defendant, was proper and helpful to the jury. *Id.* The court further held that the remainder of the witness's testimony – which included narration of portions of the surveillance video – was "admissible as ordinary fact testimony." *Id.* True, the trial court limited the witness's testimony to only portions of the video in which that witness had taken part, but the Third Circuit's opinion should not be read to suggest that first-person perception is necessarily required in every case. Though the Third Circuit approved of the trial court's approach,

8

it did not go so far as to suggest the trial court's approach was the *only* appropriate treatment of witness narration of video evidence. *See id.*

Here, the United States urges the Court to reject the defendant's overly broad request to exclude all video narration by the case agent and, instead, to adopt the same rule-based approach used in *Torralba-Mendia*, *Begay*, and *Buruca* and determine the admissibility of video narration in light of the Federal Rules at trial. Doing so would permit the case agent to testify to video evidence for routine and valid purposes, such as authentication, defendant identification, and to explain to the jury relevant portions of his investigation into the defendant's criminal conduct. Though the case agent was not present in D.C. for the events of January 6, he has reviewed the video evidence in this case countless times, as in *Torralba-Mendia*, and has therefore developed personal knowledge of the contents of these video recordings. Moreover, his testimony will be helpful to the jury in drawing attention to details in the videos depicting the tumultuous and violent interactions between police and civilians, including the defendant, on Capitol Grounds on January 6.

### III. SEQUESTRATION OF CASE AGENT: OPPOSITION AND CROSS MOTION

In a footnote to his Motion in Limine, the defendant also asks the Court to exclude the FBI case agent from the courtroom during trial. The government respectfully requests that the Court deny this request, and instead grant this cross-motion to permit the case agent, FBI Special Agent Bret Curtis, to remain in the courtroom at counsel's table during trial.

Federal Rule of Evidence 615 provides that upon a party's request or by its own authority, a court "must order witnesses excluded so that they cannot hear other witness' testimony." Fed. R. Evid. 615; *see also United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989). But the rule exempts "an officer or

employee of a party that is not a natural person, after being designated as the party's representative by its attorney." Fed. R. Evid. 615(b); *see also United States v. Lee*, 834 F.3d 145, 162 (2d Cir. 2016) (affirming decision to exempt ATF special agent because he was properly within Rule 615(b) exemption as a 'representative' of the government). In addition, under Federal Rule of Evidence 615(c), "a person whose presence a party shows to be essential to presenting the party's claim" should not be ordered excluded from the court during trial.

Several courts have held that case agents are exempt from sequestration under Rule 615(b) and (c). *See United States v. Phibbs,* 999 F.2d 1053 (6th Cir. 1993) (holding that Drug Enforcement Administration (DEA) special agent qualified as "essential" witness who could remain in courtroom, in addition to the Federal Bureau of Investigation (FBI) special agent qualified as government representative, to assist with drug prosecution, considering expected length of trial, number of defendants, and large amount of evidence); *United States v. Connors,* 894 F.2d 987 (8th Cir. 1990) (holding that trial court did not err in allowing FDIC examiner, who was the Government's final witness, to remain in the courtroom despite sequestration rule where his presence was essential to his ability to effectively testify regarding the exhibits before the jury); *United States v. Lee,* 834 F.3d 145 (2nd Cir. 2016) (holding that District Court properly exempted law enforcement agent from sequestration, as the government's case agent in prosecution of defendant for conspiring to commit and committing Hobbs Act robbery, using and carrying firearm in connection with crime of violence, and causing death through use of firearm); *United States v. Martin,* 920 F.2d 393 (6th Cir. 1990) (holding that FBI case agent was within exception to sequestration rules and was not excludable from courtroom during testimony of other witnesses, nor did agent have to testify first, even if other witnesses were being sequestered; case agent was prosecutor's information source and, even if agent had been excluded, prosecutor would have had

to reveal other witnesses' testimony in order to map out strategy); *United States v. Gonzalez,* 918 F.2d 1129 (3rd Cir. 1990) (holding that trial court did not abuse its discretion when it denied defendant's motion to sequester government's case agent, even though case agent later testified against defendant and his codefendants, inasmuch as case agent functioned as government's designated representative); *United States v. Thomas*, 835 F.2d 219 (9th Cir. 1987) (holding that Federal Evidence Rule 615 did not require exclusion of testifying government agent from trial during testimony of other witnesses, as agent was an officer for the Government); *United States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir. 1989) (holding that undercover agent who was prosecution witness during cocaine distribution conspiracy trial could be designated to sit at government counsel's table, even though he was also witness.). As the Court noted in *Adamo*, the legislative history of Rule 615 makes it clear that a government investigative agent, even if a witness, may be designated to sit at counsel's table. *Id*. (citing S. Rep. No. 1277, 93rd Cong., 2d Sess. 26 (1974), reprinted in 1974 U.S. Code Cong. & Adm. News, 7051, 7072–73).

Accordingly, Federal Rule of Evidence 615 and governing case law expressly allow for a case agent to be present in the courtroom. Here, the government is choosing to designate SA Curtis as its representative, pursuant to FRE 615. *See* FRE 615(b). Furthermore, SA Curtis is essential to the presentation of the government's case, given the unique victim and other witness issues it will pose and the large amount of digital and other evidence. SA Curtis's presence in the courtroom is necessary to allow him to effectively testify regarding the exhibits that will be admitted into evidence and, as one of the investigators throughout this case, he is the source of some of the government's information. Even if the Court were to exclude his presence, the testimony of other witnesses would need to be revealed to "fact-check" information and allegations, and to map out the government's trial strategy. Though the prosecutors on this case have changed over time given

the various staffing requirements of the United States Attorney, SA Curtis has worked on this case since its investigation and maintains a superior knowledge of the facts of this case. In sum, SA Curtis is an integral part of the trial team, and the Court should allow SA Curtis to be present in the courtroom throughout the trial.

### IV.  CONCLUSION

For the reasons above, the United States respectfully requests that this Court deny the defendant's motion in limine to (1) entirely preclude the case agent from testifying regarding the video evidence that the government may seek to introduce and (2) exclude the case agent from the courtroom during trial.

In addition, the United States respectfully requests that this Court grant its cross-motion to permit the case agent, SA Bret Curtis, to be present in the courtroom during trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:  /s/ *Katherine E. Boyles*
Katherine Boyles
J. Hutton Marshall
Assistant United States Attorneys
D. Conn. Fed. Bar No. PHV20325
DC Bar No. 1721890
Katherine.Boyles@usdoj.gov
Joseph.Hutton.Marshall@usdoj.gov
United States Attorney's Office
601 D Street NW
Washington, D.C. 20001