IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 22-cr-100-RBW |
| | : | |
| v. | : | |
| | : | |
| JACOB L. ZERKLE, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**DEFENDANT'S OMNIBUS REPLY SUBMISSION IN
FURTHER SUPPORT OF DEFENDANT'S PRETRIAL MOTIONS
TO CHANGE VENUE (D.E. 26); TO EXCLUDE IMPROPER EVIDENCE
*IN LIMINE* (D.E. 27-28); AND TO DISMISS CERTAIN COUNTS (D.E. 29)**

Jacob L. Zerkle, through his undersigned counsel, respectfully submits his omnibus reply submission in further support of his pending motions to change venue (D.E. 26), to exclude improper case agent testimony (D.E. 27), to exclude evidence and testimony relating to the breach of the United States Capitol and other related topics (D.E. 28), and to dismiss counts one through three of the indictment (D.E. 29).

**SUMMARY OF ARGUMENT**

Mr. Zerkle, who has no relevant criminal history, history of violence, or connection to any radical groups, came to Washington, D.C. on January 6, 2021 to exercise his First Amendment rights to assemble and protest, as did tens of thousands of other individuals that day. Consistent with plans for protests being well-publicized in advance, the United States Capitol Police issued permits for protests *on* Capital grounds, and the Capitol Police's Civil Disturbance Unit was aware that multiple organizations planned to hold protests near and on Capitol grounds, including one set to begin on the steps of the United States Capitol.

On January 6, 2021, Jacob Zerkle *never* went into the United States Capitol, *never*

attempted to go into the United States Capitol, and *never* wanted to go into the United States Capitol. He is not charged with obstruction of any official proceeding, including the Electoral College certification proceeding that took place on January 6, 2021. He was not arrested nor detained on January 6, 2021 for any of his actions that day, nor was he part of any organized group reported to be responsible for aspects of what occurred.

In its Opposition submissions, the Government, to its credit, makes no attempt to challenge the photographs of an *unarmed* Mr. Zerkle being pushed around like a rag doll by heavily armed and reinforced riot police, who admittedly were pushing their way through the crowd, nor does the Government dispute that the charges against Mr. Zerkle stem from a brief 29-second encounter between Mr. Zerkle and Metropolitan Police Department ("MPD") officers. The Government also makes no attempt to refute the fact that Mr. Zerkle voluntarily spoke to law enforcement on multiple occasions in Arizona and participated in a debrief remotely with Government counsel in Washington, D.C. Yet, the Government's Opposition submissions indicate that the Government still intends to try this case as if it were prosecuting an individual who breached the United States Capitol or belonged to one of the groups alleged to have entered into a seditious conspiracy to overthrow our democracy. That is not this case. Accordingly, Mr. Zerkle seeks, through his pretrial motions, to resolve any misperceptions as early as possible and before a jury is empaneled, in order to protect his constitutional rights to due process and a fair trial.

*First*, consistent with the concerns raised in the Defendant's motion *in limine* (D.E. 28) (and strongly reinforced by the Government's own submissions to this Court), the Government plans to present evidence relating to the breach of the Capitol, the Electoral College certification proceeding, the movement of Vice President Pence and his family, and the Secret Service's protection of them. Moreover, in response to Mr. Zerkle's *in limine* motion, the Government

declined to stipulate that it will not seek to introduce argument and evidence relating to a number of highly irrelevant and inflammatory topics, such as "[p]lots or actions that would constitute sedition, insurrection, rioting, and/or the overthrowing of democracy;" "[d]amage caused to the United States Capitol;" "the presence of right-wing extremist groups" at the Capitol; and "injuries" to "officers" on January 6, when the officers who engaged Mr. Zerkle were not injured, nor did they attempt to arrest Mr. Zerkle or file any routine required reports as to their use of force or injuries that day.

None of the above-referenced evidence or topics makes a fact at issue in this case more or less likely to have occurred (*i.e.*, whether Mr. Zerkle *forcibly* assaulted, through resistance, a law enforcement officer on Capitol grounds in a 29-second period of time, prior to both the breach of the United States Capitol and the subsequent suspension of the joint session). Rather, the Government intends to discuss the topics addressed in the defense's motion *in limine* before the jury to equate Mr. Zerkle with individuals who breached the Capitol, paraded and demonstrated inside the building, conspired to obstruct an official proceeding, and/or tried to impede the peaceful transition of government. Because such topics are not relevant, and also present a danger of unfair prejudice, confusing the issues, and misleading the jury, the Government's evidence should be limited to the facts and charges in this case and not those of others who came to Washington, D.C. on January 6, 2021.

*Second,* as anticipated in the Defendant's other motion *in limine* (D.E. 27), the Government plans to have a case agent from Arizona, who was not present in Washington, D.C. on January 6, 2021, not only be the Government's chief witness and narrator as to what occurred that day, including in events irrelevant to the offenses charged, but also sit at counsel's table, so he can hear the defense's opening statement, cross-examination of Government witnesses, and direct

examination of defense witnesses and prepare for his own direct examination and subsequent cross-examination by the defense. While January 6 was an extraordinary event, it did not change the process for trying cases in this country, or relax the Rules of Evidence or Criminal Procedure for prosecutions arising from that day. As discussed below, the Government should not be permitted to present irrelevant and highly prejudicial evidence at trial. Likewise, because this is a case involving 29 seconds of video footage, and not a multi-defendant seditious conspiracy trial, the Government's case agent, who was not even present in Washington, D.C. on January 6, 2021, should not be permitted to provide unnecessary narration, and should be required to remain in the witness room until it is his turn to testify.

*Third*, with regard to Mr. Zerkle's challenge to certain criminal liability under counts one through three (D.E. 29) of the Indictment, while the Government can charge Mr. Zerkle with assault *and* civil disorder arising from the same 29-second encounter, which Mr. Zerkle never disputed, it cannot use the same 29-second interaction as one of the two grounds for felony criminal liability under the assault statute when the "another felony" prong contemplates another separate crime.

*Finally*, as for Mr. Zerkle's motion to change venue (D.E. 26), the Government's Opposition simply misses the point. The concern is not whether the residents of D.C. are so aware of Mr. Zerkle's 29-second encounter with law enforcement, but whether the prejudice against those connected to January 6, 2021 is so significant as to prevent a fair trial for Mr. Zerkle, whose conduct is separate and apart from the main events of that day. Further amplifying this concern, the Government intends to present evidence regarding the breach of the United States Capitol, in which Mr. Zerkle did not participate, and to discuss radical groups seeking to overthrow democracy, of which Mr. Zerkle was not a member.

As shown in the Government's Opposition submissions, the Government wishes to equate individuals present on the National Mall who did not breach the Capitol with individuals who did. The Government further wishes to equate all individuals who came to Washington, D.C. on January 6, 2021 with those who are alleged to have engaged in a seditious conspiracy. Thankfully, the law in this country does not permit guilt by association, and neither should we as its people.

For all these reasons, discussed in further detail below, Mr. Zerkle's pretrial motions should be granted.

## ARGUMENT

I. **The Government Should Be Prohibited from Presenting Evidence with No Relevance to Where at the United States Capitol Mr. Zerkle Was Located and Whether His Actions at that Location Were a Violation of the Law.**

This case is *not* one of the pending nine hundred (900) cases where individuals are charged with offenses relating to the breach of the United States Capitol, the obstruction of an official proceeding on January 6, 2021, and/or an attempt to impede the peaceful transition of government. Rather, Mr. Zerkle is charged with offenses stemming from an alleged assault by resistance during a 29-second encounter with law enforcement, which occurred prior to and away from the breach of the United States Capitol. Because the sole determination for the jury is whether Mr. Zerkle was in violation of clearly established law where he was located and for the actions he took at that location, the Government's proffered evidence regarding the "context" of January 6, 2021 is not only irrelevant, but also presents a substantial danger of unfair prejudice, confusing the issues, and misleading the jury.

Nonetheless, the Government insists that, in order to provide a clearer picture for the jury and to prove the narrow charges in this case, it is necessary to explain the entire election certification process, discuss the violence that occurred during the breach of the United States

Capitol — which Mr. Zerkle did not participate in or encourage — and introduce views held about the fairness of the election. Again, where Mr. Zerkle was and what he was doing there are the only topics relevant to the jury's determination. Mr. Zerkle is not on trial for his political views, and he cannot have the political views of tens of thousands of separate individuals present in Washington, D.C. on January 6, 2021 attributed to him. In this country, protestors are never prosecuted for the substance of their communications or political leanings. Rather, prosecution is only warranted when the specific location of the protest, and the actions undertaken at that location, violate the law.

In seeking to prevent unfairly prejudicial and irrelevant evidence from being presented to the jury, Mr. Zerkle moved *in limine* to exclude from his trial any testimony, evidence, or arguments relating to:

**(i)** The breach of the United States Capitol on January 6, 2021;
**(ii)** Events that occurred inside the United States Capitol following the breach;
**(iii)** Damage caused to the United States Capitol on January 6, 2021;
**(iv)** The certification of the election and the consequences of the delay of the certification;
**(v)** The dangers to members of Congress, including the President of the Senate, former Vice President Mike Pence, and their staff on January 6, 2021;
**(vi)** Injuries to law enforcement officers on January 6, 2021;[1]
**(vii)** The nature of the Government's investigation into the events of January 6, 2021;
**(viii)** The belief as to the presence of right-wing extremist groups or militia groups at, near, or inside the United States Capitol on January 6, 2021;
**(ix)** Former President Donald J. Trump and potential conspiracies to overturn the election;
**(x)** Allegations of voter fraud and election interference as the motivation for the breach of the United States Capitol;
**(xi)** Plots or actions that would constitute sedition, insurrection, rioting, and/or the overthrowing of democracy.

Def.'s Mot. at 11-12 (D.E. 28).

---

[1] The only relevant injuries would be any injuries to the MPD officers identified in the Indictment, but they are not alleged to have been injured by Mr. Zerkle and the evidence establishes that none were injured in any capacity whatsoever as a result of any action undertaken by Mr. Zerkle.

In its Opposition, the Government cannot bring itself to identify even one of the above-enumerated topics that it will not reference or seek to present before the jury. And, while the Rules of Evidence make clear that the proponent of the evidence has the burden of establishing its relevance and admissibility, the Government, in its Opposition, improperly attempts to shift the burden to the defense to show why the topics should *not* be introduced at trial. Since it has failed to do so in its Opposition, hopefully, at the parties' motions hearing on May 5, 2023, the Government can proffer the relevancy of "[p]lots or actions that would constitute sedition, insurrection, rioting, and/or the overthrowing of democracy;" "[d]amage caused to the United States Capitol;" "the presence of right-wing extremist groups" at the Capitol; and "injuries" to "officers" on January 6, 2021, particularly when none of the officers who engaged Mr. Zerkle were injured, nor did they attempt to arrest Mr. Zerkle or file any reports reflecting the use of force or any injuries.

The Government's limited justification for why it *must* be permitted to present evidence regarding the "context" of January 6, 2021 is a purported need to prevent the jury from receiving a "confused picture of why Zerkle and the victim officers were on Capitol grounds that day[.]" *See* Gov't Opp'n at 5 (D.E. 32). Despite acknowledging that "a jury must find that [Mr. Zerkle] *himself* committed each offense with which he is specifically charged," *id.* at 6 (emphasis added), the Government wants this Court, and the jury, to view his alleged crimes as part of a "mob's collective action" or a "collective riot." *Id.* Indeed, the Government states that the jury should hear evidence about "the harm he helped to cause," *id.* at 4, suggesting that Mr. Zerkle is somehow culpable for the violence of others. It should be clear to everyone what was occurring on January 6, 2021, and evidence regarding the entirety of that day is not only irrelevant, but also unfairly prejudicial and likely to confuse the issues and mislead the jury. While there were individuals whose "concerted

7

efforts disrupted Congress," *see id.*, there were also validly issued permits for protests and demonstrations on Capitol grounds. Those documents, which Mr. Zerkle will introduce into evidence at trial, establish why crowds were present in Washington, D.C. and at the Capitol, to the extent the jury needs clarity on the issue.

Even more concerning, the Government has yet to confirm whether or not it intends to introduce video footage of Mr. Zerkle walking around the National Mall on January 6, 2021 that contains statements made by individuals around him, as evidence of whether he committed an assault later that day. Mr. Zerkle will address this purported evidence, which was only identified to the defense recently, on February 16, 2023, if and when the Government confirms that it will seek to admit this completely irrelevant and unjustly prejudicial information at trial.[2] As for the Government's remark that Mr. Zerkle "attacked" a group of officers, *see* Gov't Opp'n at 2 (D.E. 32), Mr. Zerkle will be filing an additional motion seeking to exclude such argument or opinion evidence, as it is completely unsupported by the discovery produced to date. Hopefully the Government will have a witness or evidence at the parties' May 5, 2023 motions hearing to support its claim that Mr. Zerkle made contact with officers first on January 6, 2021.

Given that the Government has failed to establish the relevance and justify the admission of the unduly prejudicial and inflammatory topics discussed above, Mr. Zerkle's motion *in limine* to exclude such topics should be granted.

---

[2] In its most recent filing (D.E. 37 at 5), the Government claims that while it took the time to carefully review various surveillance video of Mr. Zerkle captured by third parties and organize it in a single document as part of a presentation, it is still not sure if it will use it at trial, but will let the defense know as the trial date approaches, even though jury instructions in this matter are currently due in fourteen days.

**II.     The Government Should Not Be Permitted to Call a Case Agent to Testify as to the Events Surrounding Mr. Zerkle's Twenty-Nine Second Interaction with MPD Officers on January 6, 2021.**

In opposing Mr. Zerkle's request that the Court limit the Government's case agent, Special Agent ("SA") Bret Curtis, who is based in Arizona, from narrating video evidence of events on January 6, 2021 for which he was not present, the Government asserts that the requested prohibition "would improperly prevent the agent from providing useful and relevant testimony regarding his investigation into the defendant's criminal wrongdoing." Gov't Opp'n at 2 (D.E. 34). Notwithstanding a purported need to call SA Curtis, the Government goes on to clarify that it still intends to call "MPD officers to testify regarding their firsthand experiences with Zerkle on January 6." *Id.* As a preliminary matter, this anticipated testimony of the MPD officers with "firsthand" knowledge of the events would render the proffered testimony by SA Curtis unnecessary, irrelevant, and/or cumulative, separate and apart from the evidentiary bar to such testimony, given that SA Curtis lacks personal knowledge of what happened before, during, and after the 29-second period, the majority of which was not captured on video.

The Government further justifies SA Curtis' narration of video based on the notion that "courts routinely admit video narration by law enforcement witnesses with firsthand knowledge of individuals portrayed in the video for identification purposes or where the law enforcement witness has developed a familiarity with the footage from repeated viewings that is useful to jurors." Gov't Opp'n at 3 (D.E. 34). This contention fails for several reasons.

*First*, SA Curtis has no personal knowledge of the interactions between MPD officers and Mr. Zerkle during a 29-second encounter, absent watching the video footage. Moreover, his testimony (and interpretation) is neither relevant nor necessary when the officers *with personal knowledge* will be called to testify at trial. *Second*, the Government's suggestion that SA Curtis

will narrate video relating to the January 6 Capitol breach appears to be little more than an attempt to analogize this case (which involves a 29-second encounter between Mr. Zerkle and MPD officers), with videos involving large numbers of people, as in the cases cited by the Government. *Third*, as discussed in the factual background section of Mr. Zerkle's pretrial motions, Mr. Zerkle spoke to law enforcement on multiple occasions and admitted that he was present near the Capitol and identified himself in photographs. Mr. Zerkle would stipulate to the same as a pretrial matter, obviating any need for the Government to present a lengthy history regarding how Mr. Zerkle was identified and *misidentified twice*, when there is no dispute Mr. Zerkle was in Washington, DC on January 6, 2021.

*Finally*, the Government's citations to authority about permitting narration of videos are entirely inapplicable to this case. *See*, *e.g.*, Gov't Opp'n at 3 (D.E. 34) (citing *United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015)). In *Torralba-Mendia*, for instance, the Government called an agent as both an "expert" and a "lay witness" as to the scope of surveillance in a lengthy human smuggling conspiracy organization investigation:

> After giving expert testimony about the standard practices of alien smuggling organizations, [the agent] began to offer lay testimony. The government transitioned from expert to lay testimony by asking, '[a]nd were you eventually assigned to an investigation involving Southern Arizona shuttle companies?' [The agent] then testified intermittently over the next few days about his observations in this case. He narrated surveillance videos showing vehicles dropping off and picking up people from GS. He told the jury the duration of time lapses in the videos, pointed out the vehicles' identifying marks, tied the cars to various conspirators, and counted the number of people exiting and entering different vehicles. He also interpreted phrases in phone calls between shuttle drivers and GS. And he explained which conspirators he thought were the organization's leaders based on evidence that they controlled the migrants, recruited workers, and gave orders to the drivers.

784 F.3d at 657-58. The agent had particularized knowledge on the events in the videos, as he had "more than a decade of law enforcement experience along the border," *id.* at 657, and "would often

10

watch the video feed live while it was being recorded." *Id.* at 659. By contrast, the instant matter is not a case of a year-long human smuggling investigation with numerous conspirators, vehicles, and events that need to be tied together, nor does SA Curtis have any particularized knowledge of the Capitol or MPD procedures. Moreover, unlike *Torralba-Mendia*, where the Government could not call as witnesses the defendants to explain what they were doing in the video or to identify their own vehicles, the Government can actually call the officers who encountered Mr. Zerkle, those with personal knowledge of the events at issue, and in fact, plans to do so.

The Government also takes the position that SA Curtis' presence at counsel table is necessary because he knows the facts better than the lawyers: "Though the prosecutors on this case have changed over time given the various staffing requirements of the United States Attorney, SA Curtis has worked on this case since its investigation and maintains a superior knowledge of the facts of this case." Gov't Opp'n at 12 (D.E. 34). The Government's "staffing requirements" should not impact Mr. Zerkle's right to a fair trial. While Mr. Zerkle has no objection to SA Curtis helping the prosecutors, that should be done from the gallery of the courtroom, not from the witness stand or counsel's table. This is the especially the case where Mr. Zerkle has reserved the right to call SA Curtis as a defense witness, and where the Government has admitted SA Curtis will be its chief witness — with apparently more knowledge than the prosecutors — as he should not be permitted to hear the defense's opening statement, other witness testimony, and/or cross examination of other witnesses before he is called to the stand.

Without SA Curtis, the Government can summarize its witnesses' recollections, or lack thereof, in closing argument and introduce the 29-second video into evidence. The Government should not be permitted to present a summary witness with no personal knowledge to explain the video from his perspective and to explain the Government's theory as to what happened. For these

reasons, Mr. Zerkle respectfully requests that the Court grant his motion *in limine*.

**III.    The Government Should Not Be Permitted to Use the Same Twenty-Nine Second Interaction as the Basis for Criminal Liability Based on an Intent to Commit Another Separate Crime.**

As discussed in Mr. Zerkle's motion to dismiss (D.E. 29 at 10), Mr. Zerkle is not charged with simple assault under the D.C. Code for allegedly resisting being assaulted by MPD riot officers, but rather three separate felony violations of 18 U.S.C. § 111(a)(1) for allegedly engaging in "physical contact" with "the intent to commit another felony." Indictment, Counts I-III (D.E. 7). Though it indicted in the conjunctive, the Government apparently intends to establish criminal liability in the disjunctive. Moreover, while both prongs of the statute can separately establish liability, as it pertains to prong 2, the Government does not allege that Mr. Zerkle intended to commit another felony during his 29-second encounter with officers. Instead, the Government wants to pursue a theory that the 29-second encounter constituted two felonies simultaneously, which it cannot be permitted to do in this case. *See United States v. Hart*, 324 F.3d 740, 745 (D.C. Cir. 2003) (citation omitted) (interpreting identical language of "another felony" under the Guidelines, as meaning a felony "that is different [or] separate").

All of the cases cited by the Government in is Opposition (D.E. 35 at 5 n.1) involve instances of an intent to commit a *future* crime as a product of the alleged assault and are thus distinguishable from this case, where Mr. Zerkle is not alleged to have done anything outside the 29-second period that underlies the alleged resistance. For example, he did not go into the Capitol or proceed to move around the Capitol further after the alleged assault, as was the case in *United States v. McCaughey, et al.*, No. 21-cr-40-TNM.

As for the Government's attempt to recharacterize Judge Amy Berman Jackson's concerns about the same conduct constituting the "another felony," the record in that case is clear. *United*

*States v. Hamner*, 21-cr-689-ABJ, D.E. 29-1 at 13-14 (emphasis added) ("But the cases the government relies upon all involve something of a *different* nature, an assault on an officer when you're committing a robbery, when you're trying to get away from a drug offense or *some other offense*. . . . So, I don't see how the interference with officers during a civil disorder can be the other felony that's the necessary element to charge a felony violation of § 111, while at the same time § 111 is the other felony that makes the interference with the officers an aggravated assault.").[3] Clearly, the "intent" to commit "another felony" is a different requirement than the commission of an assault while committing another felony, as the Government would like the statute to read and as Congress could have written it if it so chose, but did not. Most important to this Court's analysis, the Government does not allege the commission of any additional conduct by Mr. Zerkle following the 29-second encounter to satisfy the second prong of the assault statute to create felony criminal liability. The Court should also not entertain the Government's invitation to expand the ways that a jury can find criminal liability for Mr. Zerkle beyond those contemplated by Congress, as it potentially invites compromised verdicts.

Contrary to the Government's other argument, Mr. Zerkle is *not* claiming that the Government cannot charge both assault and civil disorder. Instead, Mr. Zerkle's motion to dismiss asserts that the second prong of felony assault is inapplicable in this case. The Government also refuses to concede that it has already informed the defense that it considers the civil disorder under

---

[3] The Government's reliance on *Leffingwell* as authority is also misplaced (D.E. 35 at 7 n.2). Judge Jackson clearly distinguished that case because the defense stipulated to the guidelines calculations. *See Hamner*, 21-cr-689-ABJ, D.E. 29-2 at 15 ("The government noted that the cross reference was applied in the *Leffingwell* case. But in that case the defendant pled to a § 111 violation. He did have physical contact with not one, but two victims. *And most important, he agreed not to dispute the application of the guideline at the time of the plea. And that was the reason I gave on the record for using the aggravated assault guideline*" (emphasis added)).

13

§231(a)(3) to be the "another felony" language in the Indictment. In its Opposition, the Government vaguely states that "[t]he Government also anticipates that the evidence will show that Zerkle *attacked* these MPD officers with the intent to commit another felony." Opp'n at 4 (D.E. 35) (emphasis added).[4] There is absolutely no evidence to support that Mr. Zerkle committed any criminal act after being knocked to the ground by law enforcement (or intended to do so) sufficient to permit liability under the second prong of the felony assault statute.

### IV.    This Matter Should Be Transferred to the Eastern District of Virginia.

The Government simply misses the point in its Opposition to Mr. Zerkle's motion to change venue. The concern is not whether the residents of Washington, D.C. are so aware of Mr. Zerkle's 29-second encounter with law enforcement, but whether the prejudice against those connected to January 6, 2021 is so significant as to prevent a fair trial, especially when the Government intends to present: (i) evidence regarding the breach of the United States Capitol, which Mr. Zerkle did not participate in; and (ii) video of an organized right-wing group protesting, though Mr. Zerkle is not a member of the group and merely observed the protest during hours spent walking on the National Mall. Absent the Government's suspect claim that it needs this evidence to provide the jury a complete picture of what occurred on January 6, 2021, *i.e.*, to equate the actions of others to Mr. Zerkle, this irrelevant and prejudicial evidence further compromises

---

[4] Mr. Zerkle requests a hearing on the Government's claim that he made contact with officers first on January 6, 2021 as part of an "attack" on them. In its most recent submission (D.E. 37 at 7), rather than embrace the opportunity to highlight to the Court that Mr. Zerkle made contact with officers first as part of an alleged attack to support its assertions in its memoranda, the Government retreats and asserts "that the defendant is not entitled to a pretrial ruling on the sufficiency of the government's evidence." The Government is again mistaken. Just as it cannot proceed to trial with irrelevant and prejudicial argument and evidence that could taint the fairness of the trial proceeding, it cannot make arguments to the jury in its opening statement that are unsupported by the evidence that it intends to present at trial. It is through challenges *in limine* that allows a party to flush out misleading claims, arguments, and evidence prior to trial in order to reduce the potential for prejudice.


Mr. Zerkle's ability to receive a fair jury trial in this case.

In a recent jury trial for an individual, also not charged with participating in any way in any protest or attack on the United States Capitol on January 6, 2021, but only in allegedly assisting a protestor after the fact, the vast majority of the prospective jurors had direct contact with individuals who worked at the United States Capitol, watched significant hearings and news coverage relating to the January 6 breach of the United States Capitol, and/or held very strong feelings and opinions regarding the protests. *See United States v. Riley*, No. 21-cr-00628-ABJ, Oct. 17, 2021 Tr. at 33-270:

**Juror 1333** ("I ran a division at the Department of Justice. . . . I think there's an enormous amount that I could be fair about, but this one is pretty wrong.") (*id.* at 43-44);

**Juror 1026** (acknowledging "work[ing] for a senator on Capitol [H]ill on January 6" and discussing with staffers who were present on January 6 as to their negative experiences" from that day (qualified juror) (*id.* at 51-54)

**Juror 0620** (stating: "So I worked in democratic politics my entire life. I currently work for the Democratic Legislative Campaign Committee. So a lot of our work post January 6 has been around the cases and people that were involved in it. I also worked on Capitol Hill for almost three years. So familiar with the Capitol and everything there" and explaining to have "closely watch[ed]" the "January 6 news" and "constantly watching the news on Twitter and closely involved with current affairs" (qualified juror over defense objection) (*id.* at 55-58);

**Juror 1275** ("I feel like January 6th is something that a lot of people have strong emotions about on one side or the other. I feel like it's a very polarizing event. It was something very -- I was very scared on that day. Not that I was anywhere near the Capitol on that day, but it was still something that, like, evokes very strong emotion in me. And I know it's something that, like, I can't talk about with certain members of my family because we have different opinions on it. And I feel as though it's just hard to not fall down that rabbit hole when you start thinking about or talking about January 6" (qualified juror) (*id.* at 59-65);

**Juror 1173** (acknowledged to watching the January 6 hearings and "watching the hearings that were televised on C-SPAN" and describing first impression of the Capitol breach as the "White Lives Matter rally" . . . Because I know if it were black people on the Capitol grounds, it would have been a massacre") (*id.* at 99-101);

**Juror 1998** ("I formerly worked in Congress as a staff member. I have multiple friends and former colleagues who still work on the Hill. . . .They are three close personal friends, so I've had extensive conversations with them. . . . All three are chiefs of staff" (qualified juror) (*id.* at

107-108);

**Juror 1581** ("I'm the chief counsel for administrative law for a federal agency" and "[i]n my view, all of the January 6 defendants are treason -- treasonous. And I don't believe in capital punishment, but I think they should all be hung. So I don't think I can be fair about this. . . . In complete candor, I think anybody with those beliefs is -- I don't want to say stupid, but that's – it's just not anything that's in the realm of possible imagining for me as a legitimate way of thinking." (*id.* at 146-150);

**Juror 1791** ("I certainly have my own strong feelings about that" and described having a close relationship with the father of an officer attacked at the Capitol as a law partner, and while claiming to be willing to keep an open mind when questioned by the Court, upon examination by the defense, the juror acknowledged to having "zero sympathy for anyone who may in any way have themselves sympathized with the MAGA cause, particularly as it relates to a free and fair election that was determined in the rule of law." The juror further stated: "I have zero sympathy for people like that. I don't think there's an excuse for what happened that day. I think it was an abomination for our republic, constitutional republic. And I think there are a great deal of people -- not only current, but future -- that were hurt by the actions of a small minority of that day and the people that supported them, the whole apparatus. Zero sympathy.") (*id.* at 133-138).

In that case, as in others, the Government simply brushes aside such statements by prospective jurors — consistent with the sentiments in the surveys annexed to Mr. Zerkle's motion to change venue (D.E. 26-1, D.E. 26-2), so long as they can muster the magic words that the jurors can still, notwithstanding everything they have previously stated, remain impartial. If a prospective juror asserted a bias towards an individual based on race, religion, or sexual orientation, would any party or this Court, allow that person to remain a juror under any circumstance? Of course not. Similarly, if anyone equated membership or connection to MS-13, the mafia, or a gang, based on a shared characteristic, would any party or this Court, allow that person to remain on the jury under any circumstance? Again, of course not. Yet, the Government is willing to brush aside such concerns in prosecutions relating to January 6, including those of individuals who did not even enter the Capitol on January 6, 2021. They should not be permitted to do so.[5]

---

[5] There is an available remedy to prejudice in the jury pool; transferring this matter across the river to the closest United States District Court, the Eastern District of Virginia. The Government's lead case agent is from Arizona, just like Mr. Zerkle, and will not be burdened with a proceeding across

16

## CONCLUSION

For all these reasons and to ensure a fair and just trial in this matter, Mr. Zerkle requests that his pretrial motions be granted to limit improper criminal liability, exclude improper evidence, and transfer this matter to a jurisdiction that would provide for a fairer and less prejudiced jury pool.

Dated: March 17, 2023                                  Respectfully submitted,

                                                  /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile: (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Jacob Zerkle*

---

the river, just as the majority of the Government's prosecutors relating to the January 6 cases, who are detailed from various jurisdictions, and not prosecutors routinely handling assault cases in the District of Columbia.