IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : :  : No. 22-cr-100-RBW : |
| v. | : : |
| JACOB L. ZERKLE, | : : |
| *Defendant*. | : : |

**DEFENDANT'S MOTION TO CONTINUE
TRIAL FOR UNAVAILABLE COMPLAINING WITNESS**

Defendant Jacob L. Zerkle, through his undersigned counsel, moves this Court for an Order continuing the trial that is currently scheduled for August 21, 2023, as Carlton Wilhoit, the complaining witness identified in Count One of the Indictment, is unavailable for trial.

The Indictment charges Mr. Zerkle with three counts of resisting or impeding law enforcement officers outside the United States Capitol on January 6, 2021. Undersigned counsel recently asked the Government to ensure that the three Metropolitan Police Department ("MPD") officers who underlie the three separate counts of resistance, from a 29-second period, be available for trial as "essential defense witnesses." In response, on June 16, 2023, the Government for the first time informed the defense that: (i) of the three complaining witnesses, Mr. Wilhoit was the only witness whom it was *not* calling at trial; (ii) Mr. Wilhoit left the employ of MPD at some unidentified time; and (iii) the Government would forward Mr. Wilhoit's personal contact information to the defense if the Government could locate it, so that the defense could subpoena him for trial.

Promptly thereafter, undersigned counsel notified the Government that the defense independently became aware, through public resources, that Mr. Wilhoit is out of the country,

apparently for a significant period of time. In response, the Government acknowledged that Mr. Wilhoit is out of the country and the Government does not have current contact information for him.

Mr. Zerkle does not intend to forfeit either his right to cross-examine one of the essential witnesses against him in this case or the right to present a complete defense to the Government's charges at trial. The Government should have been aware that one of its complainants was unavailable at the last status hearing, when the Government insisted that the trial of this matter occur in August based solely on the public's right to a speedy trial. Here, the right of a criminal defendant to prepare and present a complete defense trumps the right of the public to a speedy trial. Neither the rules of criminal procedure nor the rules of evidence change because of the Government's desire to try all cases relating to January 6, 2021, even ones involving those who *never* even went into the Capitol or attempted to do so, as quickly as possible. The Government, however, opposes Mr. Zerkle's continuance request and provides no explanation why.

Accordingly, as discussed in detail below and for the reasons stated herein, Mr. Zerkle is entitled to a continuance of the trial date and would agree to waive his right to a speedy trial to ensure he has the appropriate opportunity to present a complete defense at trial.

**FACTUAL BACKGROUND**

Jacob Zerkle, a farmer from Arizona, traveled to Washington, D.C. and was present in the city on January 6, 2021. Mr. Zerkle spent the entire day walking up and down the National Mall. He went to Arlington National Ceremony and the Lincoln Memorial, passed the Washington Monument, and traveled to the area surrounding the United States Capitol twice. He took photographs, talked to other individuals visiting the city, and participated in a protest that was occurring that day.

That afternoon, the protest outside the United States Capitol became violent, and ultimately resulted in individuals breaking windows and doors to enter the Capitol building. To be clear, Mr. Zerkle *never* went into the United States Capitol, *never* wanted to go into the United States Capitol, and *never* attempted to go into the United States Capitol, and the Government does not allege otherwise. Mr. Zerkle was not arrested nor detained by anyone on January 6, 2021 for his actions. He did not have a weapon of any kind. He did not steal or deface any property. Mr. Zerkle has no history of violent or assaultive conduct and his criminal history consists of a traffic offense and littering charge (from 20 years ago).

Yet, after attending multiple consent meetings with agents and law enforcement officers in Arizona, participating in a debrief with prosecutors remotely in Washington, D.C., providing written consent to allow law enforcement to access certain social media accounts, voluntarily disclosing photographs, and offering to provide the clothing that he wore on January 6, Mr. Zerkle still finds himself charged with multiple felony offenses for allegedly assaulting officers.

Specifically, the Government claims that, during an approximate 29-second period of time, Mr. Zerkle resisted being pushed out of the way and hit with a baton by fully armed riot police from the Civil Disturbance Unit ("CDU") of the MPD, who were admittedly pushing people back and yelling, "Move." As will be established at trial, not a single officer was harmed in any way or suffered any injury as a result of any action undertaken by Mr. Zerkle. Not a single officer alleged to have been injured by Mr. Zerkle. Not a single officer filed a report that they were assaulted by Mr. Zerkle. Not a single officer filed a use of force report for that day regarding conduct relating to Mr. Zerkle. Not a single officer attempted to make further contact with Mr. Zerkle after he was pushed away. And, not a single officer sought to arrest Mr. Zerkle on scene or to open an investigation into his conduct. Following the 29-second period of time at issue in this case, Mr.

Zerkle left the area surrounding the United States Capitol and went home, while hundreds of others present that day went the opposite direction and entered the Capitol building.

As it pertains to former MPD Officer Carlton Wilhoit, the initial pages of the Statement of Facts in support of the Complaint against Mr. Zerkle detail numerous statements made by Mr. Wilhoit, identified by his initials C.W., as to what he was doing, what he perceived Mr. Zerkle was doing, and how Mr. Zerkle allegedly resisted him as a law enforcement officer outside the United States Capitol on January 6, 2021. *See* Complaint, Statement of Facts at 2-5 (D.E. 1-1). The Government's case agent in this case, Federal Bureau of Investigation ("FBI") Special Agent ("SA") Bret Curtis, based the Statement of Facts on his interview of Mr. Wilhoit during his investigation. Clips of Mr. Wilhoit's body worn camera ("BWC") video, when not obscured by everyone around him, are incorporated into the factual summary prepared by SA Curtis and were submitted to this Court in support of the arrest of Mr. Zerkle. *Id.*

Mr. Wilhoit was the subject of a piece relating to the events of January 6, 2021. *See* https://mariashriver.com/dc-cop-carlton-wilhoit-on-what-brought-him-hope-after-chaos/, last visited June 28, 2023. Therein, he expressed his views relating to the civil unrest in Washington, D.C. after the death of George Floyd in comparison to the civil unrest outside the U.S. Capitol on January 6, 2021. Specifically, he stated:

> It was like a cult, it felt super evil and there was actually a lack of passion. It felt like entitlement to me, like they were saying this is my Capitol and you stole the vote. And while there were definitely agitators at both rallies bent on stirring up violence, none of the BLM protestors laid a hand on us, they didn't spit on us, they didn't hit us, they just shouted. These people were out to hurt us.[1]

---

[1] The tragic events surrounding the death of George Floyd have appropriately led to a national dialogue on the criminal justice system and race, which continues to this day. Contrary to Mr. Wilhoit's statements, however, the protests that followed, nationwide and specifically in Washington, DC, became assaultive and violent at times, particularly toward law enforcement officers. A two-day city-wide evening curfew was ordered, the D.C. National Guard was deployed,

4

The photograph depicted in the aforementioned article, show events directly at issue in this case:



**Mr. Zerkle's Brother**

Specifically, it shows Mr. Zerkle's frail older brother caught between CDU MPD officers (including Officer Wilhoit) and individuals in the crowd. Officers ultimately made contact with Mr. Zerkle's brother, which was a motivation for Mr. Zerkle to ensure his brother was not harmed or injured as the officers pushed through the area in a brief 29-second encounter. This is also confirmed in BWC video produced during discovery, which shows Mr. Zerkle's brother in fear of

---

approximately 150 D.C. law enforcement officers were assaulted, and dozens of police vehicles were torched or damaged. *See*, *e.g.*, United States Secret Service May 31, 2020 Press Release, https://www.secretservice.gov/newsroom/releases/2020/05/secret-service-statement-pennsylvania-avenue-demonstrations-0, last visited June 28, 2023 ("More than 60 Secret Service Uniformed Division Officers and Special Agents sustained multiple injuries from projectiles such as bricks, rocks, bottles, fireworks and other items. Secret Service personnel were also directly physically assaulted as they were kicked, punched, and exposed to bodily fluids. A total of 11 injured employees were transported to a local hospital and treated for non-life threatening injuries."); https://www.nbcwashington.com/news/local/protesters-gather-in-dc-for-2nd-day-in-response-to-george-floyds-death/2317512/, last visited June 28, 2023 (detailing eleven MPD officers injured in one single evening); https://majorcitieschiefs.com/wp-content/uploads/2021/01/MCCA-Report-on-the-2020-Protest-and-Civil-Unrest.pdf (identifying at least 2000 injured offices nationwide from contributing data from police associations — excluding Washington, DC, which did not submit data — from May 25, 2020 through July 31, 2020 from protests relating to the death of George Floyd).

being assaulted:



## PROCEDURAL BACKGROUND

On February 13, 2023, prior to the exchange of any witness or exhibit lists, or Pretrial Statement drafted by the Government, Mr. Zerkle moved *in limine* for an Order "exclud[ing] evidence and testimony by the Government's case agent as to the case agent's interpretation and narration of what occurred in video footage reflecting interactions between Mr. Zerkle and members of the Metropolitan Police Department on January 6, 2021, of which the case agent has no personal knowledge." Def's Mot. at 1 (D.E. 27). In that motion and subsequent reply submission, Mr. Zerkle raised serious concerns and objections to permitting the Government to proceed to trial with just the testimony of its case agent, who was not present in Washington, D.C. on January 6, 2021, rather than call the MPD witnesses who allegedly encountered Mr. Zerkle:

> The affiant to the statement of facts in support of the criminal complaint against Mr. Zerkle, and the sole witness before the grand jury that returned an Indictment in this matter, was FBI Special Agent ("SA") Bret Curtis, the Government's case agent. Rather than the MPD officers who made contact with Mr. Zerkle for a 29-second period outside the United States Capitol on January 6, 2021, it has been SA Curtis who has described and testified to what he believes occurred in this case, based on his review of surveillance video and body worn camera video, and through interviewing Mr. Zerkle and certain MPD officers. It is believed that the Government intends to call SA Curtis as a witness at trial, to narrate and describe

6

>the contents of the videos from January 6, 2021 that the Government plans to introduce into evidence. Mr. Zerkle objects to such testimony.

*Id.* at 9-10. In its response, the Government acknowledged that it was seeking to have its case agent testify and narrate what he observed in the videos, and asserted that "[c]ourts routinely admit video narration by law enforcement witnesses with firsthand knowledge of individuals portrayed in the video for identification purposes or where the law enforcement witness has developed a familiarity with the footage from repeated viewings that is useful to jurors." Gov't Opp'n at 3-4 (D.E. 34). The Government, nonetheless, told Mr. Zerkle and this Court not to worry, assuring that, "***[t]o be clear, the Government also intends on calling MPD officers to testify regarding their firsthand experiences*** with Zerkle on January 6 as the defendant suggests." *Id.* at 2-3 (emphasis added). That statement is not completely accurate.

On June 15, 2023, undersigned counsel wrote to Government counsel to confirm that the relevant MPD witnesses would be available for the new trial date in late August, so as to ensure that there would be no delay in the trial if MPD witnesses were all of a sudden not available:

>You previously indicated in your opposition submission that you would be calling MPD officers as witnesses in addition to your case agent. In the rare instance that changes, please be advised, at a minimum, ***the defense plans to call the following MPD officers: Carlton Wilhoit, Christopher Boyle, Paul Koyejo, and Bronson Spooner.*** Can you please ensure that these MPD officers are CANSed and available for court beginning the week of August 21. The defense considers these officers ***essential witnesses*** and would not be able to proceed to trial if they were not available.

Jun. 15, 2023 Email to Government (emphasis added). The Government responded the next day that it planned to call the aforementioned officers, with the exception of Mr. Wilhoit, who had left MPD, even though he was the lead officer who encountered Mr. Zerkle and provided the majority of the factual basis for the Complaint in support of Mr. Zerkle's arrest. *See* D.E. 1-1 at 2-5. The Government further indicated that it would attempt to obtain Mr. Wilhoit's personal contact

information so "the defense can subpoena him independently if needed." June 16, 2023 Email from Government.

Thereafter, undersigned counsel learned through public sources that Officer Wilhoit, who shared his views on civil unrest as an MPD officer in the summer before January 6, 2021 and the events after that day in numerous press articles, decided to join the Peace Corps and leave the country. Upon notification *by the defense* on June 21, 2023, Government counsel confirmed what the defense learned on its own and stated that they "do not have [Mr. Wilhoit's] current contact information and have the same understanding as you do that he is currently out of the country." June 21, 2023 Email from Government. The Government also indicated that it would oppose any motion to continue the trial date to ensure Mr. Wilhoit's availability for trial.

## ARGUMENT

The United States Constitution guarantees criminal defendants the right to a "meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This limits a court's ability to impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "any legitimate interests," or are otherwise "disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324-25 (punctuation and citation omitted).

"The Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]'" *United States v. Hsia*, 87 F. Supp. 2d 10, 13 (D.D.C. 2000) (citing U.S. Const. amend. VI.). "The Confrontation Clause reflects ***a strong preference for face-to-face confrontations at trial***: 'a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face

with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'" *Id.* (emphasis added) (quoting *Mattox v. United States*, 156 U.S. 237, 242-43 (1895)). *See also United States v. Burden*, 934 F.3d 675, 685 (D.C. Cir. 2019) ("Live witness testimony gives the jury the opportunity to assess the witness's demeanor and allows counsel to adjust examination to other evidence and to the jury's apparent reactions as the witness testifies. . . . [T]hrough live testimony, and this [procedure] only, the persons who are to decide upon the evidence have an opportunity of observing the quality, age, education, understanding, behavior, and inclinations of the witness." (citation and punctuation omitted)). In accordance with the Confrontation Clause, "[a] testimonial statement by a person who does not appear at trial may be admitted 'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.'" *Burden*, 934 F.3d at 685 (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). "Unavailability and prior opportunity to crossexamine are independent criteria: [e]ven when a defendant had a prior opportunity to crossexamine the witness, if the government does not establish that the witness is unavailable, the testimony must be excluded." *Id.* at 685-86. In general, "a witness is considered unavailable only if the prosecution cannot procure [the witness] with good-faith, reasonable efforts," and the prosecution has the burden to "establish that its actions meet that test." *Id.* at 686.

      Mr. Wilhoit is at the center of the Government's case. It is Mr. Wilhoit's statements to the FBI a year after the events of January 6, 2021 that form the basis for the Government's allegations that Mr. Zerkle grabbed and allegedly punched Mr. Wilhoit, even though the BWC video reflects Mr. Wilhoit grabbing Mr. Zerkle's bookbag, when Mr. Zerkle was facing away from Mr. Wilhoit, and then violently pushing Mr. Zerkle away. Regardless, Mr. Zerkle has every right to cross-examine Mr. Wilhoit about his statements to the FBI case agent and to confront him with the video

9

evidence. SA Curtis should also *not* be allowed to narrate or opine on the video from January 6, 2021, based on the statements that Mr. Wilhoit made to him about the video and from his notes from the interview of Mr. Wilhoit. In effect, this would allow Mr. Wilhoit to "testify" through the Government's case agent, thereby removing the ability of Mr. Zerkle to cross-examine him. The confrontation clause expressly forbids this; to allow the Government to present what it wants to present through SA Curtis, but to have SA Curtis unable to answer basic cross-examination questions that an eyewitness with personal knowledge would know or should know if he was testifying at trial.

What is most troubling is that, if Mr. Zerkle had not raised this matter with the Government two months before trial, he would not have known that the Government no longer intended to call Mr. Wilhoit as a witness. Because Mr. Wilhoit is out of the country, Mr. Zerkle would have been unable to then subpoena him and present his testimony for trial as a defense witness. Mr. Zerkle should not have had to proceed to trial by ambush in this case.

## CONCLUSION

For all these reasons, Mr. Zerkle requests his motion to continue trial be granted.

Dated:  June 28, 2023                       Respectfully submitted,

    /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Jacob Zerkle*