**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 22-CR-100 (RBW)** |
| | : | |
| **JACOB L. ZERKLE,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE**
**TO DEFENDANT'S PRETRIAL MEMORANDUM, Doc. 57**

The United States of America, by and through its attorney, the United States Attorney for the

District of Columbia, respectfully submits the following response to Defendant Jacob Zerkle's

Pretrial Memorandum, Doc. 57.

**A. "Attempt" Instruction for 18 U.S.C. § 231(a)(3)**

The defendant argues that the "Civil Disorder – Attempt" instruction proposed by the

government should be replaced by the standard "Attempt" Redbook instruction for criminal offenses.

Redbook § 7.101.  While the elements under this Redbook instruction are similar to the government's

proposed instructions, the government believes the additional offense-specific language[1] would aid

the jury in distinguishing between attempted and completed violations of Civil Disorder under 18

U.S.C. § 231(a)(3).

**B. "Forcibly" Instruction for 18 U.S.C. § 111(a)**

For the purposes of 18 U.S.C. § 111(a), "forcibly" and "forcibly assault" should carry different

meanings.  Section 111(a) criminalizes not only forcibly assaulting certain officers, but also forcibly

resisting, opposing, impeding, intimidating, and interfering.  While the defendant cites to the Ninth

---

[1] This includes the additional language in the second element of the attempt instruction clarifying
that the substantial step should "strongly support[] that the defendant intended to commit that
crime," as well as the two paragraphs that follow the proposed elements. Doc. 39-1 at 14.

1

Circuit's Model Criminal Jury Instruction for the term "forcible assault" under Section 111(a), the defendant uses that language for his proposed definition of "forcibly" under Section 111(a).  Doc. 39-1 at 4.  The defendant's definition would render the terms "resist, oppose, impede, intimidate, or interfere" superfluous by always requiring that a forcible assault occurred before a defendant can be found to have acted forcibly.  The Court should retain its proposed instruction defining "forcibly" and "forcibly assaults" separately as proposed in the government's instruction.

### C.  <u>"Disruptive and Disorderly Conduct" Instruction for 18 U.S.C. § 1752(a)(2)</u>

The government has no objection to adopting the jury instruction for "disruptive and disorderly conduct" used in *U.S. v. Riley June Williams*, 21-cr-618-ABJ.  The government remains opposed to the defendant's originally proposed instructions for "disruptive conduct" and "disorderly conduct." *See* Doc. 39-1 at 18. By inserting the conjunction "and" in place of "or" in its proposed "disorderly conduct" instruction, the defendant's proposed instruction would change the list of ways a person's conduct *can* be disorderly to a list of requirements a jury *must* find satisfied before a person's conduct is deemed disorderly.

The government prefers the Court's proposed "disruptive conduct" instruction to the defendant's proposal because of superfluous language contained in the latter.  *See* Doc. 39-1 at 18 ("'Disruptive conduct' is a disturbance that interrupts *the normal business* or orderly conduct of an event, public activity, or *the normal course of a process*.") (emphasis added).

### D.  <u>Self-Defense or Defense of Others Instruction</u>

In his filing, the defendant argues that he is entitled to a defense-of-others instruction, because he "has every right to take the stand in his defense and explain his actions and mindset on January 6, 2021." Def. Mem., Doc. 57 at 5. As a theoretical matter, the government does not disagree that a defense-of-others instruction may become appropriate in this trial and that the defendant, of course, has a right to testify regarding his state of mind. Accordingly, the government agrees with the

defendant that it is likely premature to consider this issue at this juncture and would ask the Court to take up the issue of any kind of defense-of-others defense at the charge conference.

For now, nothing in the defendant's filing, however, affirmatively establishes any entitlement of the defendant to a self-defense or defense-of-others instruction. To establish a prima facie case of self-defense, the defendant must make an offer of proof of "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006). "If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial." *United States v. Cramer*, 532 F. App'x 789, 791 (9th Cir. 2013) (citing *United States v. Bailey*, 444 U.S. 394, 415 (1980)).

There is no reasonable argument that self-defense or defense-of-others are valid excuses for the charged offenses alleged under 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a), or 40 U.S.C. § 5104(e). A defendant like Mr. Zerkle, however, who is charged under 18 U.S.C. § 111(a) may assert, as an affirmative defense, a theory of self-defense, "which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger." *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982). But, "[a] defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted). That principle applies fully to Section 111 prosecutions. *See, e.g., United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("[A]n individual

who is the attacker cannot make out a claim of self-defense as a justification for an assault.").

To assert a defense-of-others claim, a defendant must satisfy five elements: (1) the defendant <u>actually believed</u> that another person was in danger of injury; (2) that belief was reasonable; (3) the defendant <u>actually believed</u> that the use of force was necessary to defend the person against the danger; (4) that belief was reasonable as well; and (5) the defendant used a reasonable amount of force in response. *See United States v. Slatten*, 395 F. Supp. 3d 45, 112-113 (D.D.C. 2018) (emphasis added); *accord* Pattern Criminal Jury Instructions of the Seventh Circuit, 6.01 (2012 ed.) ("A person may use force when he reasonably believes that force is necessary to defend [himself/another person] against the imminent use of unlawful force."); Wayne R. LaFave, *Substantive Criminal Law* § 10.5, Defense-of-others (Dec. 2021) ("[O]ne is justified in using reasonable force in defense-of-others person, even a stranger, when he reasonably believes that the other is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger.").

These defense theories, however, have two important limitations.  First, Congress enacted Section 111 "to protect both federal officers and federal functions."  *United States v. Feola*, 420 U.S. 671, 679 (1975).  As a result, "[a]n individual is not justified in using force for the purpose of resisting arrest or other performance of duty by a law enforcement officer within the scope of his official duties."  *United States v. Drapeau*, 644 F.3d 646, 653 (8th Cir. 2011); *see also United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("[Self-defense] principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties.").  Second, even in circumstance where an individual might be justified in using some force to resist a federal officer, that resistance must be reasonable under the circumstances.  *See Abrams v. United States*, 237 F.2d 42, 43 (D.C. Cir. 1956) (observing that "the use of 'reasonable force' only would have been open to defendants"); *see also United States v. Wallace*, 368 F.2d 537, 538 (4th Cir. 1966) (explaining that Section 111 permits "reasonable

force employed in a justifiable belief that it is exerted in self-defense"); *United States v. Perkins*, 488 F.2d 652, 655 (1st Cir. 1973) (defendant may be convicted under Section 111 where "he used more force than was necessary to protect the person or property of himself or others").

Moreover, the defendant has the initial burden of production to raise a defense-of-others claim. *See United States v. Branch*, 91 F.3d 699, 712 (5th Cir. 1996) (concerning the analytically identical self-defense justification). Only after the defendant meets his burden of production does the Government have the burden to disprove the defense beyond a reasonable doubt. *See id.* The Government is under no duty to affirmatively produce evidence to refute the defense-of-others claim. *See id*. For the defendant to satisfy the initial burden of production, "there must be evidence [in the trial record] sufficient for a reasonable jury to find in [the defendant's] favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988).

Here, the government strongly disputes the defendant's characterization of the evidence and therefore maintains that at least for now, the defendant has not demonstrated that he is entitled to self-defense or defense-of-others instruction.

*First*, the defendant's timeline of the assault is out of order. The defendant first presents Gov. Ex. 415 at 6:22 asserting that this captured the defendant and officers before the assault, and arguing that this establishes that the defendant was "initially a distance away from the individuals engaged with the MPD officers as he did not instigate any contact with them, which was completely consistent with his general actions on January 6, 2021." Doc. 57 at 6.



*Defendant highlighted in red.*

Contrary to the defendant's claim, Gov. Ex. 415 at 6:22 captured the defendant *after* his assault of MPD Officers C.B., C.W., and B.S., and it instead shows when the defendant pushed toward officers for a second time minutes later. Comparing Gov. Ex. 415 with other exhibits makes this clear. For example, the defendant is captured on Gov. Ex. 417, a separate open-source video, at 5:32 as the initial line of MPD Civil Disturbance Unit ("CDU") 42 worked their way past the defendant and the others in the crowd before any fighting between the crowd and CDU 42 has occurred.



*Defendant highlighted in red.*

This moment before fighting began is also captured on body worn camera ("BWC") evidence, which shows that at 13:59:50, seconds before the defendant's initial assault, the defendant and his brother were standing close together in the crowd:



*Defendant highlighted in red; his brother highlighted in blue.*

Moments later, BWC shows the defendant yelling "traitors!" at officers while his brother remains in the crowd:

 



*Defendant highlighted in red; his brother highlighted in blue.*

In Gov. Ex. 417 at 5:38—six seconds after he is pictured standing near CDU 42 as they walk past—the defendant is visible assaulting members of CDU 42.



*Defendant highlighted in red.*

The defendant is then pushed back into the crowd, as captured on BWC, where he turns and again yells "traitors!" at the officers.



*Defendant highlighted in red.*

Minutes later, the crowd pressed in on CDU 42, at which point the defendant began pushing through the crowd back toward officers, as shown in Gov. Ex. 417 at 6:50. This is the same moment captured in Gov. Ex. 415 at 6:22, which the defendant inaccurately stated took place before the initial assault. Doc. 57 at 6.



*Gov. Ex. 417 at 6:50; Defendant highlighted in red.*

**Second**, while the government does not contest that the defendant's brother also made contact with members of the Metropolitan Police Department ("MPD"), there is no evidence supporting that

this contact was the result of excessive force by the officers, that it motivated the defendant's assaultive conduct, or even that it was not the defendant's brother who initiated the contact through assaultive conduct. For instance, BWC footage shows that at 14:00:08, both the defendant and his brother appear to make contact with an officer:



*Zerkle highlighted in red; his brother's head highlighted in blue*

At this point in time, rather than focusing on his brother, the defendant is turned away from his brother. And instead of attempting to extricate himself and his brother from the altercation, Gov. Ex. 417 at 5:42 shows the defendant charging at CDU 42 officers multiple times with considerable force.



*Defendant highlighted in red.*

A few seconds later, BWC footage shows officers pushing the defendant's brother back into the

crowd, but there is nothing excessive or unreasonable about the force applied by the officer:



More, at 14:00:15, the defendant's brother remains standing, and appears to bring his hands

towards his face in a boxer-like position, as if he is preparing to strike the officers himself.

 

Other BWC footage shows officers pushing the defendant's brother away from the line of officers,

but again, there is no evidence that the force used was excessive or even unreasonable:



After the defendant's brother is pushed away, BWC footage shows that he actively begins walking away from the line of officers, while the defendant's feet remain planted, facing towards officers. Instead of walking away from the line of officers, the defendant then shouted at the line of officers.



Still additional BWC footage shows that after the altercation with police, the defendant remained focused on the officers, not his brother:



For these reasons, the government respectfully submits that the Court should not find that the defendant has established the appropriateness of a self-defense or defense-of-others instruction, and the Court should reserve judgment on such instructions until the charge conference.

### E.  Defendant's "Capitol Breach" Motion *In Limine*

In his Pretrial Memorandum, the defendant also supplements his briefing in support of his "Motion *in limine* to exclude evidence and testimony relating to the breach of the United States Capitol and other related topics," in which the defendant asked the Court to exclude any potential

evidence falling into eleven broad categories of evidence irrespective of their probative value. The defendant's Pretrial Memorandum also either modifies or supplements the relief sought in this motion, now asking the Court to prohibit the government "from introducing video and narration of events from inside the U.S. Capitol in this case and from being permitted to refer to Mr. Zerkle as either a rioter or insurrectionist." This relief and the relief sought in the defendant's original motion should be denied.

The defendant participated in the riot on Capitol grounds that took place on January 6, 2021. This riot—which took place both inside and outside the Capitol building on Capitol grounds—disrupted the Congressional proceedings taking place inside the Capitol building, it disrupted law enforcement efforts to secure the Capitol building and grounds, and it resulted in a citywide curfew order issued by Mayor Muriel Bowser. The defendant is charged with several offenses that directly relate to his participation in this unlawful riot.

Evidence of the existence, severity, and impact of this riot is relevant to the charges against the defendant. For example, for Count Four (charging 18 U.S.C. § 231(a)(3)), the jury must find that a civil disorder existed when the defendant interfered with law enforcement, and that this civil disorder adversely affected commerce or the performance of a federally protected function. Similarly, for Count Six (charging 18 U.S.C. § 1752(a)(2)), the jury must find not only that the defendant engaged in disorderly or disruptive conduct, but that the orderly conduct of government business and official functions were in fact impeded and disrupted. For these and other elements of offenses charged against the defendant, evidence of the Capitol riot *and* the impact of that riot—including but not limited to its impact on the Congressional proceedings taking place within the Capitol—are highly relevant at trial and in fact are required to establish elements of multiple charges against the defendant.

Despite this, the government has streamlined its case to minimize the amount of evidence

used to establish the existence, severity, and impact of the riot that occurred on Capitol grounds on January 6, 2021. As a result, in the defendant's pretrial filing, the defendant identifies just one exhibit in support of his prior claim that "the Government intends to discuss the topics addressed in the defense's motion in limine before the jury to equate The defendant with individuals who breached the Capitol, paraded and demonstrated inside the building, conspired to obstruct an official proceeding, and/or tried to impede the peaceful transition of government." Doc. 38 (Def. Reply in Support of MIL) at 3.

The defendant's requested relief goes beyond any reasonable measure necessary to guard against unfair prejudice. The government's preliminary exhibit list provided to the defendant on July 12 contains just 63 exhibits, all of which have been made available to the defendant for review. If there are government exhibits that risk unfair prejudice against the defendant, he can object to them individually, which would allow the Court to consider whether the probative value of such evidence is in fact substantially outweighed by a risk of unfair prejudice under Federal Rule of Evidence 403.[2] Precluding eleven broad categories of allegedly prejudicial topics—or prohibiting any video showing any event inside the Capitol regardless of its probative value—is a drastically overbroad response to the defendant's alleged concerns of unfair prejudice and would primarily serve only to exclude evidence that would otherwise be admissible if properly analyzed under Rule 403.

**F.   Aiding and Abetting Instruction**

The government objects to the defendant's requested instruction regarding other January 6 protesters. *See* Def. Mem., Doc. 57 at 13. The instruction is contrary to law. Indeed, it is black letter law that the defendant need not be specifically charged for aiding and abetting liability under 18 U.S.C. § 2.

---

[2] If the defendant were to move *in limine* to exclude specific pieces of evidence identified by the government on the grounds raised in his original motion *in limine*, the government would not object on timeliness grounds.

An individual may be indicted as a principal for commission of a substantive crime and convicted by proof showing him to be an aider or abettor. The indictment need not specifically charge a violation of 18 U.S.C. § 2. An aiding and abetting instruction may be given in a case where the indictment does not allege violation of the aiding and abetting statute. An aider and abettor of a crime may be tried and convicted even though the principal is not tried, convicted or identified.

*United States v. Kegler*, 724 F.2d 190, 201 (D.C. Cir. 1983) (extensive citations omitted).

Moreover, in light of the defendant's focus on others' conduct in his pretrial filings, the government requests that the jury also be instructed on aiding and abetting liability, pursuant to 18 U.S.C. § 2, for Counts 1-4 of the Indictment. The government's proposed aiding and abetting instructions follow on the next page.

## AIDING AND ABETTING: Counts 1-3[3]

In this case, the government further alleges that the defendant committed assaulting certain officers as charged in Counts 1, 2, and 3, by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Counts 1, 2, and 3.

A person may be guilty of an offense if he aided and abetted another person in committing the offense.   A person who has aided and abetted another person in committing an offense is often called an accomplice.  The person whom the accomplice aids and abets is known as the principal.  It is not necessary that all the people who committed the crime be caught or identified.  It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of assaulting certain officers because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that others committed assaulting certain officers by committing each of the elements of the offense charged, as I have explained above.

Second, that the defendant knew that assaulting certain officers was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of assaulting certain officers.

Fifth, that the defendant did that act or acts with the intent that others commit the

---

[3] 18 U.S.C. § 2(a); Third Circuit Model Jury Instructions 7.02.

offense of assaulting certain officers.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of [named crime] as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

## <u>AIDING AND ABETTING: Count 4[4]</u>

In this case, the government further alleges that the defendant committed obstructing officers during a civil disorder, as charged in Count Four, by aiding and abetting others in committing this offense.  This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count Four.

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice.  The person whom the accomplice aids and abets is known as the principal.  It is not necessary that all the people who committed the crime be caught or identified.  It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of assaulting officers because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that others committed obstructing officers during a civil disorder by committing each of the elements of the offense charged, as I have explained above.

Second, that the defendant knew that obstructing officers during a civil disorder was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstructing officers during a civil disorder.

Fifth, that the defendant did that act or acts with the intent that others commit the offense of

---

[4] 18 U.S.C. § 2(a); Third Circuit Model Jury Instructions 7.02.

obstructing officers during a civil disorder.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of assaulting officers as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

A defendant may be found guilty of the offenses charged in Count Four if the defendant obstructed officers during a civil disorder or aided and abetted obstructing officers during a civil disorder. Each of these two ways of committing the offense is described in the instructions that I have

given you. If you find beyond a reasonable doubt that the defendant committed the offense of assaulting officers in either one of these two ways, you should find the defendant guilty of Count Four, and you need not consider whether the defendant committed the offense of obstructing officers during a civil disorder in the other way.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Katherine E. Boyles*
      KATHERINE E. BOYLES
      J. HUTTON MARSHALL
      Assistant U.S. Attorneys
      D. Conn. Fed. Bar No. PHV20325
      DC Bar No. 1721890
      601 D Street, N.W.
      Washington, D.C. 20579
      (203) 931-5088
      Katherine.boyles@usdoj.gov
      Joseph.hutton.marshall@usdoj.gov