UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 22-cr-100 (RBW) |
| v. : | |
| : | |
| JACOB ZERKLE, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S PRE-CONFERENCE MEMORANDUM**

In light of the pretrial conference scheduled for August 21, 2023, the United States, through its attorney, the United States Attorney for the District of Columbia, files this memorandum to apprise the Court of the evidence that it intends to introduce at trial and discuss with the Court at the pretrial conference.

A. **Statement of the Case**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. A restricted perimeter was established on U.S. Capitol Grounds by U.S. Capitol Police and U.S. Secret Service in advance of Vice President Mike Pence and his family visiting the Capitol that day in connection with the Congressional proceedings. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol Building and Grounds of the unlawful occupants to ensure the safety of elected officials, staff, and others, including Vice President Pence and his family.

That day, the defendant, Jacob Zerkle, arrived at the National Mall in the morning, and then marched with other individuals to the Capitol Grounds. He then unlawfully entered into the

restricted perimeter on U.S. Capitol Grounds and remained there, in an area near the base of the Northwest Staircase. While there, the defendant chanted battle cries like "hang 'em high" with the growing crowd.

A few minutes before 2:00 p.m., a unit of Metropolitan Police Department (MPD) officers arrived at the Northwest edge of the grounds in order to assist and reinforce U.S. Capitol Police (USCP), who were staggeringly outnumbered by the amassing crowd on the west plaza. Once in formation, the MPD officers attempted to make their way through the crowd to the West Plaza police line while verbally directing unauthorized persons to move aside to let them pass. Between 1:59 and 2:04 p.m., as the officers attempted to navigate through the crowd to the West Plaza, the defendant attacked the line of officers, making physical contact with at least three officers: Officer Bronson Spooner, Officer Christopher Boyle, and former Officer Carlton Wilhoit. The defendant yelled at the officers that they were "traitors," grabbed them, fought with them, and repeatedly charged into them before being pushed back into the crowd, where he again yelled at the officers that they were "traitors."

As a result of the defendant's and other rioters' attacks on this line of reinforcement officers, this MPD unit was split in two, with only a few officers making it to the West Plaza police line. The other officers, including those that the defendant attacked, were separated from their commanding officer, Sergeant Jason Mastony, and they were delayed from responding to the West Plaza. Minutes later, at 2:09 p.m., rioters broke past police lines and accessed the Upper West Terrace of the Capitol. Rioters then breached the building for the first time that day by smashing the windows and kicking open the door at the Senate Wing Door entrance, which they accessed from the Upper West Terrace. USCP and USSS then escorted Vice President Mike Pence from the

2

Senate Chambers, and both chambers of Congress were ordered into evacuation and lockdown protocols.

Based on the defendant's conduct, the grand jury indicted the defendant on eight separate charges: Assaulting, Resisting, or Impeding Certain Officers (18 U.S.C. § 111(a); Counts 1–3); Civil Disorder (18 U.S.C. § 231(a)(3); Count 4); Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1); Count 5); Disorderly and Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(2); Count 6); Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(4); Count 7); Act of Physical Violence in the Capitol Grounds or Buildings (40 U.S.C. § 5104(e)(2)(F); Count 8).

### B. Summary of Evidence

The government has simultaneously filed its exhibit list to the docket in this matter. In summary, the government intends on introducing:

- 10 videos of body worn camera of Metropolitan Police Department (MPD) officers from January 6, 2021 (Exhibits 301-310), with screenshots taken from those videos

- 10 videos from third parties depicting the defendant on January 6, 2021 (Exhibits 402-411), with screenshots taken from those videos

- 6 videos derived from U.S. Capitol Police's CCTV system on January 6, 2021 (Exhibits 001, 202, 203, 603, 604, 605)

- 1 split screen video showing body worn camera footage synced with third party footage (Exhibit 802)

- 35 documents/photographs

C. **Expected Witness Order and Exhibits**

The United States will call the following witnesses at trial and expects to admit the noted exhibits through each witness:

|   | Last Name | First Name | Title & Agency | Expected Exhibits to Admit |
|---|-----------|------------|----------------|----------------------------|
| 1 | Mendoza | Carneysha | Captain, U.S. Capitol Police | 001-012; 202-203 |
| 2 | Hawa | Lanelle | Inspector, U.S. Secret Service | 601-605 |
| 3 | Curtis | Bret | Special Agent, FBI | 400-412 501-505 |
| 4 | Mastony | Jason | Sergeant, Metropolitan Police Department | 301-311 |
| 5 | Carll | Seth | Officer, U.S. Capitol Police | |
| 6 | Spooner | Bronson | Officer, Metropolitan Police Department | |
| 7 | Boyle | Christopher | Officer, Metropolitan Police Department | |
| 8 | Duckett | Noah | Officer, Metropolitan Police Department | |
| 9 | Curtis | Bret | Special Agent, FBI | 802 |

The United States may also call the following additional witnesses at trial:

|    | Last Name | First Name | Title & Agency |
|----|-----------|------------|----------------|
| 9  | Koyejo | Paul | Officer, Metropolitan Police Department |
| 10 | Whelan | Ryan | Officer, Metropolitan Police Department |
| 12 | Wilson | Joshua | Officer, Metropolitan Police Department |

D. **Summary of Expected Testimony**

The government first expects to call Captain Carneysha ("Neysha") Mendoza from the Capitol Police who will provide an overview of the U.S. Capitol building and grounds and explain how the building and grounds were protected and then overrun on January 6, 2021. The government will present video footage that will document what occurred as the U.S. Capitol

4

grounds and building were breached. The video evidence will include U.S. Capitol Police closed-circuit video (CCTV).

Second, the government expects to call U.S. Secret Service Inspector Lanelle Hawa to testify regarding the Secret Service's protection of Vice President Pence, his wife, and daughter on January 6, 2021. Inspector Hawa will detail measures taken before, during, and after the riot on Capitol grounds to ensure the security of the Pence family as Vice President Pence presided over the Joint Session of Congress. The government will present documentation related to the Pences' U.S. Secret Service protection on January 6, 2021, Capitol CCTV video documenting the evacuation of Vice President Pence and his family, and a short video montage of CCTV and third-party video showing the events of the Capitol breach in relation to the evacuation of Vice President Pence and his family.

Third, the government expects to call FBI Special Agent Bret Curtis, who is the case agent for this matter. Special Agent Curtis will identify the defendant and introduce several "open source" or "third party" videos from January 6, 2021 that depict the defendant on January 6, 2021 and were collected over the course of this investigation. Special Agent Curtis will also offer business records from a grocery store impacted by the events of January 6, 2021, pursuant to Federal Rule of Evidence 902(11).

Fourth, the government expects to call MPD Sergeant Jason Mastony. To economize the jury's time, the government anticipates introducing and authenticating all body worn camera evidence (Exhibits 301-311) through Sergeant Mastony; Officers Carll, Spooner, Boyle, and Duckett will then testify about the contents of those admitted exhibits. Sergeant Mastony will also provide testimony about his unit's mission on January 6, 2021 and the circumstances of his unit's presence on Capitol Grounds on January 6, 2021.

Fifth, the government expects to call USCP Officer Seth Carll, who met Sergeant Mastony's unit on the northwest Capitol grounds and led the unit to where they were needed to reinforce the U.S. Capitol Police line on the West Plaza.

The government then expects to call MPD Officers Bronson Spooner, Christopher Boyle, and Noah Duckett. They will testify to their experiences in the crowd on the northwest grounds of the Capitol and discuss their body worn camera footage capturing that experience.

Finally, the government seeks permission from the Court to re-call Special Agent Bret Curtis, once the body worn camera footage is admitted, so that Special Agent Curtis can identify the defendant in each of the admitted videos.[1] Bifurcating Special Agent Curtis's testimony in this manner will aid the jury in allowing a chronological presentation of evidence that will assist the jury in making sense of the video evidence in the case. In the alternative, the government will seek to show the body worn camera footage to Special Agent Curtis when he first testifies, subject to connection and admission by Sargent Mastony's subsequent testimony.[2]

---

[1] Federal Rule of Evidence 611 provides district courts with broad discretion in controlling the mode and order of interrogation and presentation of evidence. "Such discretion 'clearly' extends to the granting of permission to recall a witness, or to reopen an examination." *United States v. Mejia-Ramos*, 798 F. App'x 749, 751 (4th Cir. 2019) (quoting *Kuhn v. United States*, 24 F.2d 910, 914 (9th Cir. 1928); citing *United States v. Never Misses A Shot*, 781 F.3d 1017, 1023–24 (8th Cir. 2015); *United States v. Rucker*, 557 F.2d 1046, 1049 (4th Cir. 1977)). District courts thus have broad discretion in considering whether, in the presentation of testimony, to allow a party to recall a witness who was already cross-examined. *United States v. Fabian*, 312 F.3d 550, 558 (2d Cir. 2002), abrogated on other grounds by *United States v. Parkes*, 497 F.3d 220 (2d Cir. 2007). A district court's discretion to allow for a witness, or witnesses, to testify multiple times in the same trial does not diminish a defendant's right to cross-examination or prejudice his right to a fair trial. *See United States v. Jackson*, 549 F.2d 517, 528 (8th Cir. 1977).

[2] *See* Fed R. Evid. 104(b) ("The court may admit the proposed evidence on the condition that the proof be introduced later."); *see, e.g., United States v. Burwell*, 642 F.3d 1062, 1066 (D.C. Cir. 2011) ("Because district courts have broad discretion in controlling the order of proof at trial, however, they may conditionally admit evidence of other crimes subject to the requirement that the government later introduce sufficient evidence for the jury reasonably to find that the defendant committed those crimes.") (quotation marks omitted).

E. **Authentication of Video Evidence**

    1.  Body Worn Camera and CCTV Video Evidence (200 and 300 Series)

The government expects to introduce ten MPD body worn camera (BWC) videos and several videos derived from the U.S. Capitol Police's CCTV system.

The government intends to authenticate and introduce the BWC evidence through Sergeant Jason Mastony, who will testify about how MPD handles the BWC recording equipment and who has personal knowledge of the events depicted in the recordings as he was present on the northwest grounds of Capitol on January 6, 2021. *See, e.g.*, Fed. R. Evid. 901(b)(1) (allowing authentication by "[t]estimony that an item is what it is claimed to be"); 2 McCormick on Evidence § 216 ("[T]he requisite authentication foundation may be laid pursuant to Federal Rule 901(b)(1) by the photographer or by any witness who was present when the film was made and who therefore perceived the events filmed"); *United States v. Patterson*, 277 F.3d 709, 713 (4th Cir. 2002) ("The necessary foundation for the introduction of a photograph is most commonly established through eyewitness testimony that the picture accurately depicts the scene in question[.]"); *United States v. Rembert*, 863 F.2d 1029, 1026 (D.C. Cir. 1988) (noting one method of authentication occurs where "a sponsoring witness (whether or not he is the photographer) who has personal knowledge of the scene depicted testifies that the photograph fairly and accurately portrays that scene"); *United States v. Robinson*, No. CR419-014, 2019 WL 2881596, at *1 (S.D. Ga. July 3, 2019) (finding body-worn-camera footage sufficiently authenticated, despite the fact that the video's date stamp was wrong, by testimony from officer that he had used equipment in the past, it had proven reliable, and the recording was consistent with other surveillance of the events). The fact that an officer appears in only part of a video should not prevent him or her from authenticating the entire thing. *See* 5 Weinstein's Federal Evidence § 901.05[1] ("[A] court may admit a recording when

the witness testifies to having heard only half the recorded conversation. What the authenticating witness failed to hear goes to the weight, not the admissibility of the recording."); *United States v. Eberhart*, 467 F.3d 659, 667 (7th Cir. 2006) ("Just as a court may admit a tape recording despite a gap in the chain of custody . . . a court may admit a recording where a witness testifies that he only heard half of the recorded conversation. What the witness did not hear goes to the evidentiary weight of the recording, not to its admissibility.").

In addition to Sergeant Mastony's testimony, the government intends to call three MPD officers (Officers Spooner, Boyle, and Duckett) who will also testify to their first-hand experiences on January 6 and can identify their BWC as their own. With regard to the BWC of non-testifying officers (Officers Wilhoit, Koyejo, Whelan, Wilson, Pitt, and Stokes), the government intends on connecting the officers' names with their BWC serial numbers by reference to specific points of comparison in the videos. For example, a conversation between Sergeant Mastony and Officer Wilhoit is clearly recorded on both of their body worn cameras. When viewed together, along with Sergeant Mastony's testimony, the jury will be able to conclude that the identified BWC was indeed recorded by Officer Wilhoit's body worn camera. In addition, the government has collected the audit trails for each of the relevant BWC recordings. These audit trails are records generated by an electronic process pursuant to Federal Rule of Evidence 902(13), which document every action that was taken with respect to a particular camera and video recorded on that camera, including the officer to whom the camera was assigned on a particular day.

Similarly, the government intends on authenticating the CCTV footage through Captain Mendoza, who has both knowledge of the USCP's CCTV system and personal knowledge of the events of January 6, 2021.

2. Third Party Video Evidence

The government will also introduce video evidence recorded by third parties on January 6, 2021. The government will authenticate this evidence by eliciting testimony from Special Agent Curtis about the location and surroundings of the video and the appearance of the defendant in that video to establish that the video was recorded on January 6, 2021 in Washington, D.C. and that it depicts the defendant. *See, e.g.*, *Allen v. Hays*, 812 F. App'x 185, 193 (5th Cir. 2020) (unpublished) ("Authentication is a low burden . . . and the video's own distinctive characteristics might overcome it") (quotation marks omitted); *United States v. Cejas*, 761 F.3d 717, 724-25 (7th Cir. 2014) (finding video sufficiently authenticated where, among other things, "[w]itnesses' testimony established that the house in the video was Denny's house . . . and that the clips in court were consistent with what the live feed showed as the events unfolded"); *United States v. Holmquist*, 36 F.3d 154, 169 (1st Cir. 1994) ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."); *United States v. Kandiel*, 865 F.2d 967, 974 (8th Cir. 1989) ("The contents of the tape recordings have numerous references to people, places and activities that were corroborative of other testimony in the record. We believe the government has offered sufficient circumstantial evidence to establish the prima facie authenticity and correctness of the tapes."); *United States v. Rembert*, 863 F.2d 1023, 1028 (D.C. Cir. 1988) (finding photographs from ATM machine's video system sufficiently authenticated by, among other things, "circumstantial evidence provided by the victim witnesses as to the occurrences at the ATM machines" and "the internal indicia of date, place, and event depicted in the evidence itself"); *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (Kennedy, J.) ("Even if direct testimony as to foundation matters is absent, however, the contents

of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence.").

### F. The Defendant's Motion to Continue

Just prior to this filing, on August 20, 2023, the defendant moved for the fourth time[3] to continue trial in this matter, this time premised on *Jencks* material provided a week prior to jury selection, additional FBI reports constituting less than five full pages in total, and five open-source videos that the government does not intend to use in its case in chief. The government again opposes the defendant's request for a continuance and will be prepared to argue the motion's lack of merit before the Court at the August 21, 2023 hearing scheduled in this matter.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Katherine E. Boyles*
KATHERINE E. BOYLES
J. HUTTON MARSHALL
Assistant U.S. Attorneys
D. Conn. Fed. Bar No. PHV20325
DC Bar No. 1721890
601 D Street, N.W.
Washington, D.C. 20579
(203) 931-5088
Katherine.boyles@usdoj.gov
Joseph.hutton.marshall@usdoj.gov

---

[3] *See* Def. Mot. to Continue, Doc. 42 (5/4/23) (motion to continue based on defense counsel's other trial commitments in May in *United States v. Mark Clark*, 20-cr-151-CJN and in July in *United States v. Benjamin Soto*, 23-cr-44-RJL); Def. Mot. to Continue, Doc. 48 (6/28/23) (motion to continue based on unavailability of a potential defense witness); Order Continuing Jury Selection, Doc. 66 (8/18/23) (granting the defendant's *ore tenus* motion to continue based on defendant's unresolved evidentiary objections); Def. Mot. to Continue, Doc. 67 (8/20/23) (based on Jencks disclosures).