IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 22-cr-100-RBW |
| | : | |
| v. | : | VIOLATIONS: |
| | : | 18 U.S.C. § 111(a) (Assaulting, Resisting, |
| JACOB ZERKLE, | : | or Impeding Certain Officers); |
| | : | 18 U.S.C. § 231(a)(3) (Civil Disorder) |
| Defendant. | : | |
| | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Jacob Zerkle, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On the morning of January 6, 2021, the defendant, Jacob Zerkle, traveled to Washington, D.C., where Congress was scheduled to convene to certify the results of the 2020 election and where related protests were scheduled to occur in the surrounding area. After visiting numerous monuments, and walking up and down the National Mall multiple times, including, going back and forth from the U.S. Capitol to the area near the Washington Monument, he ultimately entered into the Restricted Area of the Capitol Grounds, which was closed to the public that day. He entered the Capitol Grounds near the Peace Circle and walked to an area

near the base of the Northwest Staircase. While there, he repeated the chants of other protestors, including, chants like "hang 'em high."

9. A few minutes before 2:00 p.m., a Metropolitan Police Department (MPD) unit arrived at the Northwest edge of the grounds in order to assist and reinforce U.S. Capitol Police (USCP), who were outnumbered by the amassing crowd on the West Plaza of the Capitol. All of these officers were wearing their official MPD uniforms that clearly identified them as law enforcement officers. The MPD officers organized themselves into a two-line formation and then attempted to make their way through the crowd to the West Plaza police line by pushing through the crowd while verbally directing unauthorized persons to move aside to let the officers pass. Mr. Zerkle and his older brother Samuel Zerkle were at the edge of the crowd closest to officers passing through it. Between 1:59 and 2:04 p.m., as the officers attempted to navigate through the crowd to the West Plaza, where a police line had been established, Mr. Zerkle, as well at other individuals in the crowd, physically engaged with the officers and Mr. Zerkle intentionally made physical contact with at least three officers: Officer B.S., Officer C.B., and Officer C.W. That contact included placing his hands on officers' persons and forcibly pushing these three officers with his hands. During the course of the crowd's encounter with the officers, Mr. Zerkle made comments echoing the crowd's statements, including yelling that the officers were "traitors."

10. As a result of the defendant's and other individuals present in the crowd's physical confrontation with this line of reinforcement officers, the MPD officers were split in two groups, resulting in only a few officers initially making it to the West Plaza police line. This hindered the officers from responding to security threats in the area and from reinforcing strategic locations that were subsequently breached.

11. The defendant's conduct, as described above, took place during a civil disorder.

The events on the Grounds of the U.S. Capitol and inside the U.S. Capitol Building constituted a "civil disorder," as that term is used in 18 U.S.C. § 231(a)(3), because the events created a public disturbance involving acts of violence by assemblages of three or more persons, which caused an immediate danger of or resulted in damage or injury to the property or person of another individual.

12. Moreover, civil disorder on the Grounds of the U.S. Capitol and in the U.S. Capitol building on January 6, 2021, as described in paragraph 11, obstructed, delayed, and adversely affected commerce or the movement of any article or commodity in commerce as those terms are used in Title 18, United States Code, Section 231(a)(3). In particular, the civil disorder adversely affected the sales of Safeway grocery stores within the District of Columbia, whose products travel in interstate commerce before being sold in the District.

13. The civil disorder on the Grounds of the U.S. Capitol described in paragraph 11 also obstructed, delayed, and adversely affected the performance of federally protected functions, including the Secret Service's protection of the Vice President and his immediate family, and the orderly protection of the U.S. Capitol Building by U.S. Capitol Police.

14. All of the MPD officers with whom the defendant interacted were lawfully engaged in the lawful performance of their official duties, incident to and during the commission of this civil disorder, which included assisting the USCP to secure the U.S. Capitol.

### *Elements of the Offenses*

15. The parties agree that 18 U.S.C. § 111(a) requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer B.S., an officer of the Metropolitan Police Department.

   b. Second, the defendant did such acts forcibly.

    c. Third, the defendant did such acts voluntarily and intentionally.

    d. Fourth, Officer B.S. was assisting officers of the United States who were then engaged in the performance of their official duties.

    e. Fifth, the defendant made physical contact with Officer B.S. or acted with the intent to commit another felony.

16. The parties agree that 18 U.S.C. § 231 requires the following elements:

    a. First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with Officers B.S., C.B., and C.W.

    b. Second, at the time of the defendant's act, those officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

    c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce and the conduct or performance of any federally protected function.

### *Defendant's Acknowledgments*

17. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer B.S. and made physical contact with Officer B.S.'s person while Officer B.S. was assisting officers of the United States engaged in the performance of their official duties, and that the defendant acted with the intent to commit another felony; namely, a violation of 18 U.S.C. § 231(a)(3) (civil disorder). The defendant also admits that he interfered with Officers B.S., C.B., and C.W. while they were lawfully engaged in the lawful

performance of their official duties incident to and during the commission of a civil disorder that obstructed interstate commerce and the performance of federally protected functions.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:   */s/ Katherine E. Boyles*
        KATHERINE E. BOYLES
        J. HUTTON MARSHALL
        Assistant U.S. Attorneys
        D. Conn. Fed. Bar No. PHV20325
        DC Bar No. 1721890
        601 D Street, N.W.
        Washington, D.C. 20579
        (203) 931-5088
        Katherine.boyles@usdoj.gov
        Joseph.hutton.marshall@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Jacob Zerkle, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/2/2023

Jacob Zerkle
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/2/2023

Christopher Macchiaroli, Esq.
Attorney for Defendant